IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| GLENN GATES and DONNA GATES, h/w<br>On behalf of themselves and all others<br>similarly situated<br>Plaintiffs,<br><br>v.<br><br>ROHM AND HAAS COMPANY, et al.<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CLASS ACTION<br><br><br><br><br>Civil Action No. 2:06-CV-01743-GP |

**MEMORANDUM OF
HUNTSMAN CORPORATION AND
HUNTSMAN INTERNATIONAL LLC
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

## INTRODUCTION

As set forth more fully in the Motion of Huntsman Corporation and Huntsman International LLC for Summary Judgment and supporting papers, Huntsman Corporation and Huntsman International LLC do not belong in this case, as neither can have any liability for any of plaintiffs' claims.  Beyond plaintiffs' simple failure of proof against them, however, Huntsman Corporation's and Huntsman International LLC's continued presence in this litigation raises a number of individualized evidentiary issues that undermine plaintiffs' bid for class certification.

Huntsman Corporation and Huntsman International LLC adopt and incorporate by reference in its entirety the Brief in Opposition to Plaintiffs' Motion for Class Certification Submitted by Defendants Rohm and Haas Company, Rohm and Haas Chemicals LLC and

Morton International Inc. ("Rohm and Haas Brief"), including the expert reports attached

thereto, which applies equally to the two Huntsman defendants.  Huntsman Corporation and

Huntsman International LLC submit this additional memorandum to highlight several specific

issues unique to the Huntsman defendants that further support a denial of plaintiffs' motion for

class certification.

## **BACKGROUND**

Huntsman Corporation is a holding company formed in 2004.  *See* Exhibit A to

Motion of Huntsman Corporation and Huntsman International LLC for Summary Judgment

(Affidavit of Troy M. Keller ¶¶ 5-6). It has never had any operations or physical assets, including

none in McCullom Lake Village or McHenry County, Illinois.  *See id.* at ¶¶ 7-8.  Plaintiffs have

never offered any facts or expert testimony to dispute these fundamental facts.

Huntsman International LLC, a subsidiary of Huntsman Corporation, acquired a

thermoplastic polyurethane (TPU) business previously owned by Rohm and Haas in July of

2000.  Under the Purchase Agreement, Huntsman International LLC (formerly Huntsman ICI

Chemicals LLC) acquired a TPU operation, including processes and equipment, located on a

portion of Rohm and Haas's Ringwood site, and leased from Rohm and Haas the portion of the

property devoted to that operation.  *See* Exhibit B to Motion of Huntsman Corporation and

Huntsman International LLC for Summary Judgment (Affidavit of Samuel D. Scruggs, Exhibit 1

(Purchase Agreement)).  The undisputed record shows that ***Huntsman International LLC***

***assumed <u>no</u> liability for pre-2000 environmental practices at the site***.  *See id*. (Scruggs Aff.

¶ 8).

Since 2000, the only products manufactured by Huntsman International LLC at its Ringwood facility have been solid, plastic, non-hazardous materials. *See* Exhibit C to Motion of Huntsman Corporation and Huntsman International LLC for Summary Judgment (Affidavit of Peter deVries ¶ 6). Huntsman International LLC does not use TCE, vinylidene chloride (also known as 1,1-DCE) or vinyl chloride – the three chemicals at issue in this litigation – in any of its processes in the operation of its TPU business in Ringwood, nor do any of its processes generate any of these chemicals. *Id*. at ¶ 7. None of the manufacturing processes used by the TPU business at Huntsman International LLC's Ringwood facility generates any chemical byproducts. *Id*. at ¶ 9.

Since its TPU operations began in Ringwood in July 2000, Huntsman International LLC has not been cited or investigated for any spill, leak, emission or release by any governmental regulatory agency. *Id*. at ¶ 12. As plaintiffs' hydrogeologist and toxicologist have admitted, there is no evidence that Huntsman International LLC has ever released chemicals that have contaminated the air, soil or groundwater in McCullom Lake Village. Deposition of Gary Ginsberg, attached as Exhibit A, at 228:2-21; Deposition of James Gregory Hill, attached as Exhibit B, at 111:10-113:17. The jointly retained defense experts agree. *See* Exhibit B to Rohm and Haas Brief (Expert Report of Peter J. Drivas at 5); Exhibit D to Rohm and Haas Brief (Expert Report of Peter A. Valberg at 10); Exhibit A to Rohm and Haas Brief (Expert Report of Robert D. Mutch, Jr. at 2-1, 4-1—4-16). Importantly, according to plaintiffs' own hydrogeologist, Huntsman International LLC ***cannot*** be liable for any alleged exposure to groundwater contaminants because ***none*** of the classmembers were exposed to ***any*** contaminants in the groundwater in or after the year 2000. Hill Dep. at 70:5-71:17, 111:19-113:17.

## ARGUMENT

**I.     CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS'
PROPOSED CLASSES CANNOT BE DEFINED UNTIL THE COURT HAS
HEARD THE MERITS OF INDIVIDUAL CLAIMS.**

As argued in the Rohm and Haas defendants' opposition to class certification,

plaintiffs' class definitions fail to support a class because the Court cannot determine whether

any given current or former resident of the Village is a member of a proposed class.  For

example, the proposed medical monitoring class consists of individuals *actually exposed* to

"TCE, 1,1-DCE and/or vinyl chloride originating from defendants' properties."  Making such a

determination requires a process that "would entail the very sort of minihearing on the merits of

each proposed class member's case" that class actions are supposed to avoid.  *Kline v. Security*

*Guards, Inc.,* 196 F.R.D. 261, 267 (E.D. Pa. 2000) (requiring that class be capable of being

"determined at the *outset* of the litigation," without an inquiry into the merits of the plaintiffs'

claims).

Plaintiffs' inclusion of the Huntsman defendants in this litigation further

compounds this problem.  For example, plaintiffs' class definitions are entirely premised on

exposure to 1,1-DCE, TCE and vinyl chloride (sometimes referred to as "chlorinated solvents").

Yet, plaintiffs have no evidence that Huntsman Corporation has ever had any operations

involving these chemicals and no evidence that Huntsman International LLC has ever used

chlorinated solvents in its Ringwood TPU operations.  In addition, plaintiffs' medical monitoring

and injunctive relief classes seek relief for "hazards" the defendants "created" and to alleviate the

risk of disease the defendants "caused."  Since these alleged hazards and risk of disease are

defined by exposure to 1,1-DCE, TCE and vinyl chloride, Huntsman Corporation and Huntsman

International LLC cannot be proper defendants to these proposed classes as it is impossible for

them to have "caused" or "created" any risk related to chlorinated solvents since they do not use them.

Plaintiffs' failure to define the class with respect to time further confuses the issues. First, in addition to the fact that it has no operations or physical assets, Huntsman Corporation was not formed until 2004. Second, Huntsman International LLC simply *cannot*, as a matter of law, be held liable for any pre-2000 exposure to anything, let alone chlorinated solvents. As the class is currently defined, however, it is impossible to tell whether plaintiffs are claiming that *any* classmembers were actually exposed post-2000. In addition, plaintiffs' own hydrogeology expert has unequivocally testified that he does not believe *any* of the putative classmembers experienced exposure to toxins in the groundwater during or after the year 2000. Thus, plaintiffs' class definitions do not make clear which classes, if any, implicate Huntsman Corporation and/or Huntsman International LLC. That determination will necessarily require individualized inquiry into the merits of plaintiffs' exposure and causation claims, not only in the ways identified in Rohm and Haas's Memorandum, but also *specifically as they relate to Huntsman Corporation and/or Huntsman International LLC*.

II.     **CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS' CANNOT SATISFY THE COMMONALITY, TYPICALITY AND ADEQUACY OF REPRESENTATION REQUIREMENTS.**

In addition to the problems identified in Rohm and Haas's Memorandum arising from plaintiffs' attempts to generalize their allegations to achieve the requirements of Rule 23, Huntsman Corporation's lack of presence ever and Huntsman International LLC's limited involvement with the Ringwood site compound the problems faced by plaintiffs. Since neither Huntsman defendant uses chlorinated solvents or had any involvement with the Ringwood site

prior to 2000, there is no way in which named plaintiffs' claims could be typical of those of the

proposed classes, or that common issues could predominate.  Moreover, named plaintiffs cannot

be adequate representatives of a class defined by exposure to chlorinated solvents where neither

they nor any putative class members have any claims relating to chlorinated solvents used by

Huntsman Corporation and Huntsman International LLC.

     **A.**       **Plaintiffs Have Failed To Demonstrate That There Are Common Questions Of Law Or Fact.**

As set forth by Rohm and Haas, plaintiffs' theories of "community exposure,"

general causation and epidemiological proof of supposed increased risk are not sufficient to

satisfy the requirements for class certification.  The presence of Huntsman Corporation and

Huntsman International LLC illustrate these problems since neither Huntsman defendant had any

involvement with the site until Huntsman International LLC's purchase of the TPU business in

2000, nor have they ever used chlorinated solvents.  Plaintiffs' experts have failed to account for

this distinction among the defendants in any way.

For example, plaintiffs list certain questions they believe to be "common

questions of law and fact" asserted by the plaintiffs against all the defendants in support of the

proposed medical monitoring class.  These "common questions" include (1) whether "class

members [were] exposed to TCE, 1,1-DCE and/or VC in amounts higher than normal

background levels;" and (2) whether "TCE, 1,1-DCE or VC [are] hazardous substances."

Plaintiffs' Class Certification Memo. at 31-32.  The other "common questions" asserted by

plaintiffs also are premised on exposure to chlorinated solvents.  As Huntsman Corporation and

Huntsman International LLC use no chlorinated solvents, and never have, plaintiffs can have no

common questions of law and fact with respect to these defendants and the plaintiffs' alleged

exposure to chlorinated solvents.  The same is true with respect to plaintiffs' nuisance, trespass, negligence, CERCLA and fraud and conspiracy claims.  Each is based on class definitions that require exposure to TCE, 1,1-DCE or vinyl chloride.[1]

With class definitions based entirely on exposure to chlorinated solvents, plaintiffs cannot simply posit a generalized theory of community exposure to chemicals emanating from the area of alleged contamination.  Any analysis put forth by plaintiffs would require at least a sufficiently individualized determination of exposure to be able to tell whether Huntsman Corporation or Huntsman International LLC could possibly have any liability as to a given classmember or subset of classmembers.  Not only would there need to be individualized determinations as to whether any particular classmember had experienced any exposure in the first place, but there would need to be individualized determinations as to whether an exposed classmember was exposed as a result of Huntsman Corporation's or Huntsman International LLC's activities.  This determination will require discovery and trial as to, among other issues, when each would-be classmember moved to the area, when any former residents moved away and when each classmember drank well water and in what amounts over time.

The need for this type of individualized discovery – just to determine whether Huntsman Corporation or Huntsman International LLC have *any* liability – negates any benefit derived from the class mechanism.

---

[1]     Plaintiffs' mention of the possibility of benzene exposure for the first time ever in opposition to the Motion of Huntsman Corporation and Huntsman International LLC for Summary Judgment only makes matters worse for the plaintiffs.  Not only did plaintiffs never mention benzene in either the Amended Complaint or their Motion for Class Certification, suggesting that this belated reference is nothing more than a last-ditch attempt to salvage their claims as to Huntsman Corporation and Huntsman International LLC, but the introduction of assertions related to additional chemicals at this late stage further demonstrates the lack of common issues.

Even plaintiffs' proposed common epidemiological proof of brain cancer risk fails because of the inclusion of Huntsman Corporation and Huntsman International LLC in this lawsuit.  In addition to the individualized discovery required to conduct a proper epidemiological analysis, as discussed in the Rohm and Haas Brief, any epidemiological study would also need to account for the fact that there is a distinction between defendants who have ever used chlorinated solvents and pre-2000 and post-2000 events that directly impacts whether Huntsman Corporation and/or Huntsman International LLC have any liability in this case.

**B.      Plaintiffs Have Failed To Demonstrate That Their Claims Are Typical Of Their Proposed Class.**

Given the distinctions among classmembers and the individualized issues of proof required with respect to Huntsman Corporation and Huntsman International LLC, it cannot be said that Mr. and Mrs. Gates's claims are "typical" of all classmembers.  For example, their claims are not typical of those who left the area before 2000 and therefore have no claim against Huntsman International LLC or Huntsman Corporation (for any period of time) simply because neither Huntsman defendant existed at the Ringwood site prior to 2000.  Nor are the plaintiffs typical of those who arrived on the scene after 2000 and who base their claims on exposure to chlorinated solvents.  Given that they allege only exposure to 1,1-DCE, TCE and vinyl chloride, plaintiffs' claims cannot be typical of any claims against Huntsman Corporation or Huntsman International LLC based on exposure to these chemicals since neither Huntsman defendant has ever used those chemicals in Ringwood.  Plaintiffs simply have made no attempt to describe their proposed classes in a way that would enable the Court to determine membership in the class without considering the merits of plaintiffs' claims.  "[I]n the absence of a clearly defined class,

the typicality requirement cannot be met." *In re Paxil Litig.,* 212 F.R.D. 539, 549 (C.D. Cal. 2003).

>    **C.    Plaintiffs Have Failed To Demonstrate That They Will Adequately Represent Their Proposed Classes.**

Plaintiffs here cannot adequately represent the interests of putative classmembers who may have claims against Huntsman Corporation and Huntsman International LLC based on exposure to chlorinated solvents.  For example, plaintiffs cannot adequately represent anyone claiming to require medical monitoring as a result of exposure to chlorinated solvents from Huntsman Corporation or Huntsman International LLC since the only medical monitoring class proposed in their complaint relates to brain cancer allegedly caused by vinyl chloride exposure, which Huntsman Corporation and Huntsman International LLC do not use.

**III.    THE PROPOSED PROPERTY LOSS CLASS FAILS THE PREDOMINANCE AND SUPERIORITY TESTS UNDER RULE 23(B)(3).**

In addition to plaintiffs' failure to satisfy the predominance and superiority requirements of Rule 23(b)(3) identified in the Rohm and Haas Brief, Huntsman Corporation's and Huntsman International LLC's lack of involvement with chlorinated solvents and Huntsman International LLC's uniquely late entry into Ringwood as compared to the other defendants undermine any claim by plaintiffs that the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 597, 622 (1997).  Too many individualized issues of exposure – what, when, where and how – abound, particularly when plaintiffs purport to define classes based on exposure to chlorinated solvents.  The class mechanism is simply *not* superior to honing and adjudicating these diverse issues through individual litigation.

**IV.    THE PROPOSED MEDICAL MONITORING CLASS FAILS THE REQUIREMENTS FOR CERTIFICATION UNDER RULE 23(B)(2).**

In general, "medical monitoring classes suffer from cohesion difficulties" rendering certification under 23(b)(2) inappropriate.  *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1122 (8th Cir. 2005).  Putative class members in such cases "share little in common" because "[i]t is unclear . . . [who, if any] will contract . . . disease and, if so, what disease each will suffer."  *Amchem Prods. v. Windsor,* 521 U.S. 597, 624 (1997).

Since any such claims against Huntsman Corporation or Huntsman International LLC must be completely distinct from the already ill-defined medical monitoring program proposed with respect to brain cancer (since Huntsman Corporation and Huntsman International LLC have never used vinyl chloride), it cannot be said that plaintiffs' medical monitoring claims are in any way uniform or cohesive across the putative class.  Plaintiffs acknowledge that the case for medical monitoring is based on "one set of closely related chemical compounds." Plaintiffs' Class Certification Memo. at 46.  While this may be true, by claiming contamination from chlorinated solvents triggers the need for medical monitoring, plaintiffs demonstrate that they have no cohesive claim against Huntsman Corporation and Huntsman International LLC.

## <u>CONCLUSION</u>

For these reasons and those set forth in the Rohm and Haas memorandum, plaintiffs' Motion for Class Certification should be denied.

/s/ Jennifer A. L. Battle
Ralph G. Wellington (I.D. No. 10068)
Dennis R. Suplee (I.D. No. 03336)
Jennifer A. L. Battle (I.D. No. 86765)
Stephen A. Fogdall (I.D. No. 87444)
Alison C. Finnegan (I.D. No. 88519)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103
(215) 751-2488; 2068; 2647
   *Attorneys for Defendants*
   *Huntsman Corporation and*
   *Huntsman International LLC*

Dated:  February 12, 2007.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of February, 2007, the foregoing

Memorandum by Huntsman Corporation and Huntsman International LLC in Opposition to

Plaintiffs' Motion for Class Certification was served on the parties as follows:

<u>By ECF and first-class mail</u>:

Aaron J. Freiwald, Esquire
Patricia M. Giordano, Esquire
Glenn A. Ellis, Esquire
LAYSER & FREIWALD, P.C.
1500 Walnut Street, 18th Floor
Philadelphia, PA 19102
*Attorneys for Plaintiffs.*

Albert G. Bixler, Esquire
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street, 9th Floor
Philadelphia, PA 19102
*Attorney for Modine Manufacturing Company.*

<u>By first class mail</u>:

David B. Bartel, Esquire
Quarles & Brady LLP
411 East Wisconsin Avenue
Milwaukee, WI 53202-4497
*Attorney for Modine Manufacturing Company.*

/s/ Jennifer A. L. Battle