IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENN GATES, et al.,** | : | **CIVIL ACTION** |
|     **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROHM AND HAAS COMPANY, et al.,** | : | |
|     **Defendants** | : | **NO. 06-1743** |

**MEMORANDUM AND ORDER**

PRATTER, DISTRICT JUDGE                                                         MAY 3, 2007

In this putative class action, Glenn and Donna Gates (the "Plaintiffs"), on behalf of themselves and all others similarly situated, sued Rohm and Haas Company, Rohm and Haas Chemicals, LLC (collectively, "Rohm and Haas"), Morton International, Inc. and Modine Manufacturing Company[1] pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and state law for damages allegedly resulting from contamination of their drinking water by pollutants allegedly generated and released by the Defendants. Rohm and Haas filed a motion styled as a "Motion for Partial Summary Judgment, to Amend Class Allegations and to Limit Plaintiffs' Counsel's Communications with Putative Class Members, the Public and the Press,"[2] which Mr. and Mrs. Gates oppose. In response, the Gateses move the Court to stay consideration of the

---

[1] Defendants Huntsman and Huntsman Polyurethanes were dismissed without prejudice by stipulation on March 23, 2007 (Docket Nos. 91 and 93).

[2] At the status conference on January 10, 2007, counsel for Rohm and Haas informed the Court and counsel for Plaintiffs that Rohm and Haas voluntarily withdrew the portion of this Motion that seeks to limit Plaintiffs' counsel's communications with putative class members and others. Therefore, such application is considered withdrawn for all purposes. See Order of 1/10/07 at n.1.

Rohm and Haas Motion. Because the Court concludes that the evidence in the record is sufficient to raise a genuine factual question as to the issue of "current" contamination in McCullom Lake Village, the Motion for Partial Summary Judgment and to Amend Class Allegations, and, consequently, the Motion to Stay Consideration both will be denied.

**BACKGROUND**

The Gateses and the proposed class members are residents and property owners in McCullom Lake Village, a town in the state of Illinois of approximately 1000 people and just over 400 homes, according to the 2000 Census. (See McCullom Lake Village, Illinois Fact Sheet, American Factfinder, United States Census Bureau, *available at* http://factfinder.census.gov (last visited 4/27/07)).

Rohm and Haas Company is an international specialty chemicals company; Morton International, Inc. is its wholly owned subsidiary. Until January 1, 2005, Morton operated a speciality chemicals manufacturing facility in Ringwood, Illinois (the "Rohm/Morton facility"), located directly north and allegedly hydrologically[3] and hydrogeologically[4] "up gradient" from McCullom Lake Village. As of January 1, 2005, Rohm and Haas Chemicals, LLC, a wholly owned subsidiary of Rohm and Haas, has been operating the Rohm/Morton Facility. Modine Manufacturing Company is an international manufacturer of heating and cooling technology. Since 1961, Modine has operated a manufacturing facility in Ringwood, Illinois (the "Modine

---

[3] Hydrology is "a science dealing with the properties, distribution, and circulation of water on and below the earth's surface and in the atmosphere." Merriam-Webster Dictionary 609 (11th ed. 2003).

[4] Hydrogeology is "a branch of geology concerned with the occurrence, use, and functions of surface water and groundwater." Merriam-Webster Dictionary 608 (11th ed. 2003).

Facility"), located directly north and allegedly hydrologically and hydrogeologically "up gradient" from McCullom Lake Village.

Counsel for Mr. and Mrs. Gateses alleges that the Defendants generated and released "chlorinated solvents," "volatile organic compounds,"[5] "other noxious and toxic substances" and/or "hazardous substances" (Compl. ¶¶ 23, 28, 55, 61, 64, 66, 131, 134, 140, 145, 146, 150, 152-54, 172(a) and p. 6), that have contaminated the drinking water and air in McCullom Lake Village.  According to the Gateses, these hazardous substances have caused at least five cases of malignant brain cancer in residents of McCollum Lake Village, have engendered fear on the part of the residents of developing brain cancer, and expenses associated with obtaining safe drinking water and taking precautions against further exposure.  The Gateses and the putative class seek relief that includes requiring Rohm and Haas and all the corporate defendants to compensate class members for their efforts to obtain safe drinking water, provide safe drinking water to Village residents, prevent further contamination by water and airborne contaminants, and fund testing and medical monitoring.  The Gateses also seek damages, including "out of pocket damages, temporary loss of value of property, discomfort, aggravation and annoyance and permanent loss of value of property," and punitive damages.

At the request of the Defendants, the Court bifurcated discovery between issues related to class certification and issues related to the merits.  No discovery on the merits is permitted until after the Court rules on the Plaintiffs' Motion for Class Certification.  The deadline for class certification discovery is June 28, 2007.

---

[5] Specifically, the "VOC's" allegedly at issue here are trichloroethene ("TCE"), 1,1-dichloroethylene ("1,1-DCE") and vinyl chloride ("VC").

**I.    MOTION TO STAY CONSIDERATION**

The Gateses contend that the Court should deny the Rohm and Haas Motion for Partial Summary Judgment and to Amend Class Allegations, but, in the alternative, request that the Court stay consideration of the Rohm and Haas Motion pursuant to Federal Rule of Civil Procedure 56(f) until the completion of discovery on the merits.[6]

While the Court must give a party opposing summary judgment "an adequate opportunity to obtain discovery" prior to ruling on a summary judgment motion, Radich v. Goode, 886 F.2d 1391, 1393 (3d Cir. 1989) (internal citation omitted),[7] the Court concludes there is sufficient evidence in the record at this juncture to rule on the Rohm and Haas Motion for Partial Summary Judgment and to Amend Class Allegations and that considerations of fairness to all parties do not prevent the Court's acting on the Motion without further delay. Therefore, the Court will deny the Motion to Stay Consideration.

---

[6] Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

[7] The Court of Appeals for the Third Circuit recently noted, it is "improper for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion." Doe v. Abington, 480 F.3d 252, 257 (3d Cir. 2007) (citing Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994)).

## II.  MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO AMEND CLASS ALLEGATIONS

### A.  Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case," id. at 325, or by offering affirmative evidence which demonstrates that the plaintiff cannot prove his case, Lawrence v. Nat'l Westminister Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996).  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The evidence provided by the nonmovant is to be believed, and the Court must draw all reasonable and justifiable inferences in the nonmovant's favor. Anderson, 477 U.S. at 255.

However, a nonmoving plaintiff cannot defeat a motion for summary judgment by merely restating the allegations of the complaint, but instead must "point to concrete evidence in the record that supports each and every essential element in his case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (citing Celotex, 477 U.S. at 322); see also Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002) ("When opposing a motion for summary judgment, the party bearing the burden of persuasion in the litigation is obligated to identify those facts of record which would contradict the facts identified by the movant.").

Pursuant to Rule 56(d), a party may also move for partial summary judgment. Rule 56(d) provides:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d). Under Rule 56(d), the Court has the power to grant partial summary judgment by ruling on issues where the facts are substantially uncontroverted, including the amount of damages or other relief. See Kramer v. Newman, 840 F. Supp. 325, 327 (E.D. Pa. 1993) ("a court may, in appropriate cases, render partial summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure") (citing Cohen v. Board of Trustees, 867 F.2d

1455 (3d Cir. 1989) (en banc), aff'd by 16 F.3d 404 (3d Cir. 1993)).[8]

### B. Undisputed Facts

The following facts are undisputed.

In April 2006, at the request of counsel for the Gateses, six residential drinking wells in McCullom Lake Village were sampled and tested. These included the Gateses' own well, and the wells at the residences of Brian L. Freund and at the former residence of Franklin D. Branham, two individuals who had both developed brain cancer and who are represented by Plaintiffs' counsel. The well tests showed elevated levels of fluoride, but no other indication of

---

[8] The Plaintiffs contend that the Rohm and Haas Motion is improper because Rule 56(d) does not permit partial summary judgment on "part of a claim" or issue. See Cohen v. Bd. of Trustees, 867 F.2d 1455, 1463 (3d Cir. 1989); Mills v. Larson, 56 F.R.D. 63, 65 (W.D. Pa. 1972) (partial summary judgment is generally reserved for cases in which there are distinct and separate claims and not in which there is but a single claim). Arguably, here there is a "separate" claim with respect to relief from alleged damages resulting from current contamination. The Court, however, need not decide this issue because Rohm and Haas will not prevail on the Motion.

Similarly, the Court need not decide whether it may, as the Defendants contend, strike certain class allegations from the Complaint. Under the Federal Rules of Civil Procedure Rule 23, "the court may make appropriate orders . . . requiring the pleadings to be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly." Fed. R. Civ. P. 24(d)(4). Under Rule 23(d)(4), the District Court may in some instances require that pleadings be amended to eliminate class allegations. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 184 n.6 (1974). This provision is generally applied when the suit must proceed as an individual, nonclass action. See, e.g., Barabin v. Aramark Corp., 210 F.R.D. 152, 162 (E.D. Pa. 2002) (denying motion to certify class and directing plaintiffs to file an amended complaint "deleting all class action allegations"); Thompson v. Merck & Co., No. 02-4176, 2004 WL 62710, at *8 (E.D. Pa. Jan. 6, 2004) (court has power to strike class allegations under Rule 23(d)(4)). Nonetheless, the Court may issue orders pursuant to Rule 23(d)(4) that do not require the entire action to proceed on a nonclass basis. See, e.g., Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452 (E.D. Pa. 1968) (narrowing the description of the first and third classes); Hardy v. United States, 289 F. Supp. 200 (D.C. Ala. 1967) (maintaining class action upon condition that plaintiffs file amended complaint clearly defining the class); see also 5 Moore's Federal Practice § 23.145 (3d ed. 2006) (court may delete certain allegations if it becomes clear that the Plaintiffs cannot prove those portions of their claims).

contamination.[9]  In his deposition on November 17, 2006, the Plaintiffs' hydrogeology expert, James Hill, testified that he had not seen any evidence showing vinyl chloride contamination in any domestic well in McCullom Lake Village.  (Hill Dep., Def. Mem. Ex. B at 66.)

On May 2, 2006 and May 23, 2006, the McHenry County Health Department conducted tests of nine McCullom Lake Village residential wells.  Of the nine, one showed elevated levels of 1,1,1-trichloroethane ("1,1,1-TCA"), a chemical *not* regarded as carcinogenic.  (Pl. Response Ex. C.)  The level of 1,1,1-TCA was within safety levels determined by the EPA.  (Def. Mem. Ex. G.)  Mr. Hill agrees that these tests indicate "the absence of chemicals *above the detection limit*."  (Hill Dep., Def. Mem. Ex. B at 69 (emphasis added).)  Mr. Hill also agrees that the contamination plume from the Modine and Rohm/Morton facilities is not presently in McCullom Lake Village.  (Id. at 105.)

Around the same time, in a May 22, 2006 letter to Carl Coker, the Corporate Remediation Manager for the Rohm/Morton facility, the Illinois EPA notified Rohm and Haas that "a notice must be issued to property owners with potable drinking water wells near the Rohm & Haas facility in Ringwood Illinois, informing them that a threat exists to the area groundwater and that their well may be at risk of contamination."  (Pl. Response Ex. G.)  For his part, Mr. Coker has testified that he does not have "a numerical value on [his] confidence level" that "no contaminants traveled due south of the Morton and Modine facilities in Ringwood" because, as of September 28, 2006, the date of Mr. Coker's deposition, Rohm and Haas had not installed "any wells due south of [the] property line."  (Coker Dep., Pl. Response Ex. F at 346.)

---

[9] The quantity or concentration of the other chemicals inventoried was below the reporting limit.  (See Def. Mem. Ex. A.)

McCullom Lake Village is located south of the Rohm/Morton facility.

The Plaintiffs conducted further testing of residential wells in January 2007. This testing revealed elevated levels of chloride in 9 of the 24 wells tested, in addition to elevated levels of ammonia. (Hill 2/2/07 Report, Pl. Supp. Mem. Ex. C.) According to Mr. Hill, the chloride levels were higher than background levels found in the McHenry County wells. (Hill 3/5/07 Report, Pl. Supp. Mem. Ex. D.)[10] The elevated levels[11] of chloride and ammonia are relevant not because they themselves are harmful, but because they are "tracer" chemicals for past DCE and vinyl chloride contamination. (See Lantzy Dep., Pl. Supp. Mem. Ex. G at 162-65.) Unlike the cancer-causing vinyl chloride, chloride is a stable chemical that is not biodegradable. (Lantzy Dep., Pl. Supp. Mem. Ex. E at 303.) Chloride and ammonia, along with vinyl chloride, ammonium chloride, DCE and TCE, are components of the groundwater plume generated by the Defendants' facilities. (Mutch Report, Pl. Supp. Ex. F at 2-1 to 2-2.) This is because ammonium chloride, DCE, TCE and vinyl chloride release ammonia ions and chloride ions when they dissolve or degrade in the ground. (Lantzy Dep., Pl. Supp. Mem. Ex. G at 162-65.) There is

---

[10] The Defendants contend that Mr. Hill's submissions of December 20, 2006, February 2, 2007 and March 5, 2007 are not sworn or made under penalty of perjury and, therefore, do not meet the requirements of Rule 56(e). However, it appears that the Defendants do not contest the essence of these submissions – namely, the levels of the detected chemicals, if not their significance – for the purposes of this motion. (See Defendants' First Second Supp. Mem. 4 (focusing on two basic contentions: (1) none of the chemicals found in any of the McCullom Lake Village well tests is a known carcinogen, and (2) none of the chemicals found in any well in McCullom Lake Village is present at an unsafe level)).

[11] The Defendants assert that these levels are "elevated only in comparison to a 1984 U.S. Geological Survey, and then only by inconsequential amounts." (Def. Supp. Mem. 5.) This information, however, like any dispute as to the validity of Mr. Hill's credentials or findings, must be weighed by the trier of fact at trial or evaluated by the Court in a Daubert motion, not in a motion for partial summary judgment.

some indication that, at least at one time, senior Morton officials regarded the presence of chloride and ammonia as "contamination."  (Pl. Supp. Mem. Ex. I.)

### C.     Discussion

Rohm and Haas seeks summary judgment against the named Plaintiffs on all claims for damages and injunctive relief based on alleged *current* contamination of their properties, and to strike all allegations in the Amended Complaint (1) asserting or implying that there is current contamination in McCullom Lake Village; (2) seeking property damages or loss of value based on the alleged need to remediate; (3) requesting damages or injunctive relief dependent upon allegations of current contamination and the alleged need for a clean source of drinking water; and (4) seeking medical monitoring.

#### 1.     Current Contamination

Although the Defendants have no obligation to provide evidence *negating* the Plaintiffs' assertions of current contamination, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), they do have an affirmative burden to identify those portions of the record that demonstrate the absence of a genuine issue of material fact, id. at 322.   The existence of a good faith dispute as to what the evidence means or its significance is sufficient to preclude summary judgment.  See In re Unisys Sav. Plan Litigation, 74 F.3d 420, 433 (3d Cir. 1996) ("[E]ven if the facts are undisputed, summary judgment may not be granted where there is disagreement over inferences that can be reasonably drawn from those facts.").

The evidence of "current contamination" presented to the Court thus far is certainly not conclusive.  At the summary judgment stage, however, it need not be.  It is sufficient that there is evidence in the record showing elevated levels of chemicals in the residential wells and

demonstrating that these, albeit innocuous, chemicals are biochemically linked to carcinogenic chemicals. Taken in the light most favorable to the Plaintiffs, as the Court must in considering a summary judgment motion, the evidence supports the theory that the volatile carcinogenic chemicals may have degraded and dissolved, leaving "tracers" chemicals as the only evidence of contamination.[12]

While there could be other sources of chloride ions, there is a genuine issue of fact as to whether the current elevated levels of chloride and ammonia, in addition to the fluoride and 1,1,1-TCE, are indicative of current contamination. In other words, the dispute of fact is not *what* is in the residential wells of McCullom Lake Village, but rather, the *meaning* or *significance* of the chemicals indisputably found there. Moreover, there is evidence that these chemicals, even if harmless, nonetheless have been considered "contamination" by senior Morton officials.

Given the ambiguous nature of the term "current contamination," the elevated levels of these "tracer" chemicals is sufficient to preclude partial summary judgment because the issue of whether the presence of these chemicals constitutes "current contamination" is a question of fact for the jury.[13] The Gateses have exceeded the "mere scintilla" threshold and, therefore, the Court

---

[12] The Court will not address at this time the issue of potential air contamination because the evidence regarding groundwater contamination is sufficient to preclude summary judgment and because the Defendants' Motion focused on groundwater contamination.

[13] Of course, in the context of a tort action, a factual finding of contamination alone would not be actionable. The Court, however, is not deciding the far more complicated question of liability. Rather, it is deciding only the narrow question of whether there is a genuine issue of fact as to the existence of "current contamination" in the residential wells of McCullom Lake Village. Having answered this question in the affirmative, the Court will leave the issue of causation raised by the Defendants for another day. For example, the Defendants emphasize the lack of evidence connecting any current "contamination" to the Defendants' facilities. That is

cannot at this juncture credit the Defendants' version of events, "even if the quantity of the movant's evidence far outweighs that of its opponent." In re Unisys Sav. Plan Litigation, 74 F.3d at 433. It is "the province of the factfinder to ascertain the believability and weight of the evidence." Id.

### 2. Proposed Property Loss Classes

Rohm and Haas contends that, in light of the current absence of carcinogenic chemicals, the Gateses must rely on past contamination to prove liability, thus excluding from the class any residents who moved out of McCullom Lake Village before the alleged contamination began or who moved into McCullom Lake Village after the alleged contamination ended. Therefore, asserts Rohm and Haas, the class of property owners must be stricken in its entirety because that class consists of "persons who own or owned property in McCullom Lake Village as of the date of the filing of this action, and who have incurred or will incur costs and expenses and other financial and other losses as a result of the toxic contamination from defendants' properties," (Compl. ¶ 111), but, as of the date of the filing of the action, there was no contamination.

This defense argument fails for two reasons. First, the logic of this argument depends on the premise that there is no current contamination and, as discussed above, the Court has concluded that there is a genuine question of fact as to this issue. Second, even if this premise

---

not the issue before the court, however, and, moreover, that issue is relevant to the merits, not class certification. The parties agree, and Court acknowledges, that there are other possible sources for the chemicals detected in the well tests, and that the detected chemicals are not carcinogenic. Nonetheless, the Court will not decide the question presented here, i.e., whether there is sufficient evidence in the record to raise a genuine issue of fact as to the existence of any current contamination, on the basis of the purported absence of evidence connecting any such contamination to the Defendants. Causation is a separate issue that is more properly addressed after the parties have conducted discovery on the merits.

were not disputed, it does not eliminate the class of property owners. Even if there is no "current" contamination, persons who owned property at the time of filing may very well have incurred costs, or will incur costs in the future, as a result of *past* contamination. Likewise, *past* contamination could cause property values to decline, even long after the contamination has been successfully remediated or has ceased to occur.

### 3. Requests for Relief Based on Allegations of Current Contamination

Following the premise that there is no contamination to cause exposure or taint the residential wells, Rohm and Haas also seeks to strike "any request for relief based on allegations of present contamination," including the request that the Defendants fund measures to prevent further exposure and connect putative class members to the municipal water supply (Compl., Relief Request ¶ B), and the request for damages due to "temporary loss of value of property, discomfort, aggravation and annoyance and permanent loss of value of property" (id. at ¶ D). For the same reason, Rohm and Haas also seeks to strike the Plaintiffs' request for judgment against the Defendants for "response costs" incurred by putative class members under CERCLA. (Id. at ¶ C.)

These assertions depend on facts not conclusively established by the evidence in the record thus far. First, the alleged period of contamination, if any, has not yet been established. Second, even if a fixed period of contamination was established, there is no evidence supporting the conclusion that once contamination has physically ceased to be present, all damages, such as diminished property values, discomfort, aggravation and annoyance, also cease. Finally, it has not been conclusively established that there is no "current contamination" and, therefore, requests for relief relating to current exposure and water supplies remain pertinent.

### 4. Medical Monitoring Class

Rohm and Haas contends that the Gateses' definition of the proposed medical monitoring class should be stricken as well because it includes "persons who currently own property in or reside in . . . property that has been impacted by toxic contamination from defendants' properties." (Compl. ¶ 109.) This definition, argues Rohm and Haas, encompasses residents who could have no claim based on alleged past contamination because they moved into the Village after the hypothetical period of contamination ended.

Again, this arguments requires that the Court first accept the conclusion that no contamination is currently present and, therefore, a claim for medical monitoring could only be based on past contamination. As discussed above, the evidence in the record thus far does not conclusively answer this question, leaving a genuine issue for the jury. Moreover, to the extent the Defendants are concerned that the medical monitoring class is overly broad, that argument is best left to class certification rather than a motion for partial summary judgment on the narrow issue of current contamination.

**CONCLUSION**

For the foregoing reasons, the Plaintiffs' Motion to Stay Consideration is denied. The Rohm and Haas Motion for Partial Summary Judgment and to Amend Class Allegations is denied without prejudice to later raise the issue with respect to class certification or as otherwise appropriate. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENN GATES, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **ROHM AND HAAS COMPANY, et al.,** | : | |
| **Defendants** | : | **NO. 06-1743** |

**ORDER**

AND NOW, this 3rd day of May, 2007, upon consideration of the Plaintiffs' Motion to Stay Consideration (Docket No. 56), it is hereby ORDERED that the Motion is DENIED; and upon consideration of the Rohm and Haas Motion for Partial Summary Judgment and to Amend Class Allegations (Docket No. 54); the Plaintiffs' response thereto (Docket No. 57); the Rohm and Haas Reply (Docket No. 60); Modine's Memorandum in Support of Summary Judgment (Docket No. 69); Modine's Supplemental Memorandum (Docket No. 82); the Rohm and Haas Supplemental Memorandum (Docket No. 83); the Plaintiffs' Supplemental Memorandum (Docket No. 84); the Rohm and Haas Second Supplemental Memorandum (Docket No. 85); the Plaintiffs' Second Supplemental Memorandum (Docket No. 86); and the Rohm and Haas Third Supplemental Memorandum (Docket No. 87), it is further ORDERED that the Motion for Partial Summary Judgment and to Amend Class Allegations (Docket No. 54) is DENIED WITHOUT PREJUDICE.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE