**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENN GATES, <u>et al.</u>,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROHM AND HAAS COMPANY, <u>et al.</u>,** | : | |
| **Defendants** | : | **NO. 06-1743** |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, J.                                                            FEBRUARY 20, 2008

In this putative class action, Glenn and Donna Gates, on behalf of themselves and all

others similarly situated as residents and property owners in McCullom Lake Village in Illinois,

sued Rohm and Haas Company, Rohm and Haas Chemicals, LLC (collectively, "Rohm and

Haas"), Morton International, Inc. and Modine Manufacturing Company[1] pursuant to the

Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"),

42 U.S.C. § 9601, *et seq.*, and Illinois state law for damages allegedly resulting from

contamination of their drinking water by pollutants allegedly generated and released by the

Defendants.

After lengthy negotiations, the Plaintiff and Defendant Modine reached a proposed

settlement, and now seek the Court's preliminary approval of the proposed settlement agreement

and the proposed form of notice to putative class members.  The non-settling defendants, Rohm

and Haas and Morton, object to certification of the proposed settlement classes, which are

identical to the proposed litigation classes, prior to the Court's decision regarding certification of

---

[1] Defendants Huntsman and Huntsman Polyurethanes were dismissed without prejudice
by stipulation on March 23, 2007 (Docket Nos. 91 and 93).

the litigation classes.

Following a hearing on February 11, 2008 and upon review of the parties' submissions and the governing law, the Court concludes preliminarily that the proposed settlement classes meet the requirements of Rule 23, and the proposed settlement is within the range of reasonableness.  The Court also concludes that the notice provisions are consistent with the requirements of due process, Rule 23 and 28 U.S.C. § 1715.  Accordingly, the Court will grant preliminary approval to the proposed class, class representatives, class settlement and notice provisions.[2]

**FACTUAL BACKGROUND**

The Gateses and the proposed class members are residents and property owners in McCullom Lake Village, Illinois, a town of approximately 1000 people and just over 400 homes. (See McCullom Lake Village, Illinois Fact Sheet, American Factfinder, United States Census Bureau, *available at* http://factfinder.census.gov (last visited 2/14/08)).

Rohm and Haas Company is an international specialty chemicals company; Morton International, Inc. is its wholly owned subsidiary.  Until January 1, 2005, Morton operated a speciality chemicals manufacturing facility in Ringwood, Illinois (the "Rohm/Morton facility"),

---

[2] The Court also concludes, and Rohm and Haas acknowledges, that it is proper for the Court to preliminarily certify the settlement classes at this juncture, provided that the grant of preliminary approval is without prejudice to the defenses and positions of the non-settling defendants as to any issue, including certification of the litigation classes.  (Tr. 2/11/08 at 5-6.) See also Columbus Drywall & Insulation, Inc. v. Masco Corp., 2007 WL 2119022, at *7 (N.D. Ga. Jul. 20, 2007) (granting preliminary approval of partial settlement prior to decision on certification of litigation class); In re Bulk (Extruded) Graphite Prods. Antitrust Litig., 2006 WL 891362, at *1 (D.N.J. Apr. 4, 2006) (certifying litigation class and noting prior approval of partial settlements as to other defendants).  The Court's Order is without prejudice to the non-settling defendants' right to challenge class certification.

located directly north and allegedly hydrologically[3] and hydrogeologically[4] "up gradient" from McCullom Lake Village.  As of January 1, 2005, Rohm and Haas Chemicals, LLC, a wholly owned subsidiary of Rohm and Haas, has been operating the Rohm/Morton Facility.  Modine Manufacturing Company is an international manufacturer of heating and cooling technology. Since 1961 Modine has operated a manufacturing facility in Ringwood, Illinois (the "Modine Facility"), located directly north and allegedly hydrologically and hydrogeologically "up gradient" from McCullom Lake Village.

The Gateses allege that both facilities discharged into a landfill waste water containing chemicals that degraded to form vinyl chloride, a carcinogen.  Water containing the vinyl chloride allegedly flowed underground in two "plumes": a shallow plume that emptied into a marshy area southeast of the Rohm/Morton facility and more than a mile north of McCullom Lake Village, and a deeper plume that flowed through an alleged underground channel into the eastern part of McCullom Lake Village, where it contaminated certain Village drinking wells.

Between 1968 and 2002, vinyl chloride allegedly evaporating from the shallow plume blew over the Village, causing some Village residents to breathe varying amounts of it.  Between 1978 and 2002, vinyl chloride in Village wells above the deeper plume allegedly mixed with the air in some Village houses when the well water was used for household purposes, and residents of those houses breathed it.  Breathing the vinyl chloride allegedly placed Village residents at

_____

[3] Hydrology is "a science dealing with the properties, distribution, and circulation of water on and below the earth's surface and in the atmosphere."  Merriam-Webster Dictionary 609 (11th ed. 2003).

[4] Hydrogeology is "a branch of geology concerned with the occurrence, use, and functions of surface water and groundwater."  Merriam-Webster Dictionary 608 (11th ed. 2003).

risk of contracting brain cancer, and the contamination had an adverse impact on the value of all

real estate in the Village as of April 2006 (when this suit was filed).  Consequently, the Plaintiffs,

on behalf of themselves and other Village residents, seek funding for medical monitoring to

detect brain cancer, as well as damages for the diminution in value of their properties.

The Plaintiffs concede, however, that to date, the Plaintiffs "have not identified any link

between Modine and the alleged contamination of ground water referenced in the Complaint."

(Joint Motion at ¶ 3.)  They also concede that "Modine was, at most, only a relatively small

contributor to the alleged contamination of air asserted in the Complaint."  (Id.)

**THE PROPOSED PARTIAL SETTLEMENT**

Following two full days of mediation with a former federal magistrate judge and

extensive negotiations, the Plaintiffs and Modine reached a settlement resolving this matter as

between those parties only.  The proposed Settlement Agreement provides for the payment of up

to $2,000,000, allocated between two different proposed settlement classes.  The proposed

settlement classes consist of a Medical Monitoring Settlement Class and a Property Damage

Settlement Class.

The "Medical Monitoring Settlement Class" is defined to include all persons who lived

for one year or more in total (whether consecutively or not) within McCullom Lake Village

during the time period from January 1, 1968 to December 31, 2002.  The "Property Damage

Settlement Class" is defined to include all persons who have held an ownership interest in real

property within McCullom Lake Village at any time between April 25, 2006 (the date of the

filing of the Complaint) to January 18, 2008 (the date the Settlement Agreement was executed).

Excluded from both classes are individuals for whom a brain tumor has been detected prior to

January 18, 2008 (the date of the Settlement Agreement) and individuals who as of January 18,

2008 have already filed personal injury claims arising out of exposure to chlorinated solvents.

Pursuant to the Settlement Agreement, the funds are to be allocated as follows:

(i)      A fund of $1,400,000 for payments to Medical Monitoring Settlement Class

claimants, allowing for reimbursement of up to $1,400 for any Medical

Monitoring Settlement Class member to obtain an MRI or other appropriate

screening or test;

(ii)     A fund of $100,000 for payments to Property Damage Settlement Class claimants,

allowing for a maximum payment of $1,000 per property (to be shared pro rata if

there are multiple claimants to a single property);

(iii)    Up to $500,000 for Court-approved attorneys' fees and all settlement

administration costs, including the costs of a Claims Administrator and notice

costs related to the Settlement.

The amounts awarded to claimants for medical monitoring and property damages are to

be increased or decreased pro rata, depending upon the number of claimants.  Thus, it will be

impossible to discern the exact amount each class member will receive until the final approval

hearing, at which time the deadline for the submission of claims will have passed.  In any event,

however, each claimant in each settlement class will receive the same amount as the other

members of that class, regardless of any individual differences in exposure or property damage.

In the event there are funds remaining after the payment of all timely property damage

claims, the remaining funds will be paid, subject to the Court's approval, to local I.R.C. §

501(c)(3) charities that benefit McCullom Lake Village.  In the event there are funds remaining

after payment of all timely medical monitoring claims, class counsel may petition the Court to use the remaining funds: (i) to pay for procedures for claimants who submitted untimely claims in the 180-day period after the Settlement Agreement became final; and/or (ii) to pay for additional medical monitoring procedures for prior claimants.  If any funds remain thereafter, class counsel will petition the Court to pay them over to a local I.R.C. § 501(c)(3) charity for the benefit of McCullom Lake Village.

**LEGAL STANDARDS**

**I.      Class Action Settlement Procedures**

Rule 23 of the Federal Rules of Civil Procedure provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Judicial review of a proposed class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing.  The preliminary approval

decision is not a commitment approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason." Smith v. Professional Billing & Management Services, Inc., 2007 WL 4191749, at *1 (D.N.J. 2007) (citing In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y.1997); Manual for Complex Litigation, § 21.632 (4th ed.2006)). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." Id. Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement.

## II.    Preliminary Approval Determination

The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re Linerboard Antitrust Litigation, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing In re General Motors Corp. Pick-up Truck Fuel Tank Product Liability Litigation, 55 F.3d 768, 785-86 (3d Cir. 1995)); see also In re Cendant Corp. Litigation, 264 F.3d 201, 233 n.18 (3d Cir. 2001). If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. In re Linerboard, 292 F. Supp. 2d at 638 (citing In re Gen. Motors Corp., 55 F.3d at 785).

In addition, where, as here, the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23. Amchem

v. Windsor, 521 U.S. 591, 620 (1997).  At the preliminary approval stage, the Court may

conditionally certify the class for purposes of providing notice.  MCL at § 21.632 ("The judge

should make a preliminary determination that the proposed class satisfies the criteria set out in

Rule 23(a) and at least one of the subsections of Rule 23(b).").  Accordingly, at this stage, the

Court will determine whether the proposed class should be conditionally certified, leaving the

final certification decision for the fairness hearing.

Rule 23(a) requires that the parties moving for class certification demonstrate the

following:

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).  Even if the requirements of Rule 23(a) are met, the parties must also show

that the action can be maintained under at least one of the subsections of Rule 23(b).  Rule 23(b)

sets forth the circumstances which allow an action to be maintained as a class action.

Here, the parties seek to certify the settlement classes under Rule 23(b)(2) and (3).  Rule

23(b)(2) permits certification when "the party opposing the class has acted or refused to act on

grounds generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(3) permits class actions where the court finds that "the questions of law or fact

common to the members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

**DISCUSSION**

**I.      Rule 23 Requirements**

The Supreme Court has noted that subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives."  Amchem, 521 U.S. at 621.  "That dominant concern persists when settlement, rather than trial, is proposed."  Id.  Indeed, these specifications of Rule 23 – "those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context.  Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Id. at 620.

**A.      Rule 23(a)**

**1.      Numerosity**

Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  Newton, 259 F.3d at 182; Fed. R. Civ. P. 23(a)(1).  "No single magic number exists satisfying the numerosity requirement."  Behrend v. Comcast Corp., 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citation omitted).  However, our Court of Appeals typically has approved classes numbering 40 or more.  See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, the Plaintiffs allege that there are approximately 400 homes in McCullom Lake Village and approximately 1,000 current residents.  Thus, the Medical Monitoring Settlement Class, which includes all persons who resided in the Village for at least one year between 1968 and January 2008, very likely consists of at least 1,000 people, and possibly more.  The Property Damage Settlement Class consists of approximately 400 people.  These classes are sufficiently numerous to make joinder of all members impractical, and thus satisfy the numerosity requirement.

### 2.    Commonality

To satisfy the commonality requirement, plaintiffs must show the existence of at least one question of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2); Johnston v. HBO Film Management, Inc., 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, Powers v. Lycoming Engines, 245 F.R.D. 226, 236 (E.D. Pa. 2007), and does not require "an identity of claims or facts among class members,"  Behrend, 245 F.R.D. at 202.

The existence of individual facts and circumstances will not defeat commonality so long as the plaintiffs allege harm under the same legal theory.  Baby Neal v. Casey, 43 F.3d 48, 56-58 (3d Cir. 1994).  Nevertheless, courts have held that the commonality requirement cannot be met "where Plaintiffs' proposed common questions are inherently individualized, requiring inquiry into the particular circumstances of each [Plaintiff] . . . ."  Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995).  In other words, "[t]he common issue must significantly advance the litigation."  Kane v. United Independent Union Welfare Fund, 1998 WL 78985, at *4 (E.D. Pa. Feb. 24, 1998).

10

Here, the fundamental factual issue of exposure to the alleged pollutants is common to all class members in the Medical Monitoring Settlement Class, as are the legal issues of duty and breach.  See Yslava v. Hughes Aircraft Co., 845 F. Supp. 705, 713 (D. Ariz. 1993) ("The core issues of liability and exposure [in the medical monitoring claim before the court] are common to all class members.  Commonality among the members exists notwithstanding certain factual variations.").  Likewise, the questions of duty, breach, causation and damages are common to the members of the Property Damages Settlement Class.  The Plaintiffs' statutory and intentional tort claims also raise additional common questions.  Thus, for purposes of preliminary approval, the commonality requirement is satisfied.

### 3.     Typicality

To evaluate typicality, the Court must inquire "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  Beck v. Maximus, Inc., 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting Baby Neal, 43 F.3d at 55).  "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class."  Powers, 245 F.R.D. at 236 (citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998); Jones v. GPU, Inc., 234 F.R.D. 82, 97 (E.D. Pa. 2005)).  The typicality requirement entails an inquiry as to whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  Behrend, 245 F.R.D. at 203 (quoting Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988)).

"'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'"  Beck, 457 F.3d at 295-296 (quoting Baby Neal, 43 F.3d at 58).[5]  However, "[w]here the defendant can raise unique defenses to each plaintiff's claim, typicality may not exist if the defenses could threaten to become the focus of the litigation."  Powers, 245 F.R.D. at 236 (quoting Jones, 234 F.R.D. at 98).  A court may sever claims or use subclasses to treat individual issues separately.  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985).

Here, any probable factual differences are more relevant to damages than to liability.  The claims of the class representatives are virtually identical to those of the class members.  All class members' claims arise from and challenge the same course of alleged conduct, and thus the interests of the class representatives are aligned with those of the class members.  See In re Prudential, 148 F.3d at 311 ("The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.").  The class representatives here do not allege that they were

---

[5] According to the Supreme Court, the typicality and adequacy inquiries often "tend[ ] to merge" because both look to potential conflicts and to "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Beck, 457 F.3d at 296 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997)). Because of the similarity of these two inquiries, certain questions – such as whether a unique defense should defeat class certification – are relevant under both.  Nevertheless, our Court of Appeals has emphasized that a court should address each Rule 23(a) factor in a certification decision.  "Despite areas of overlap, each factor involves distinct considerations.  The adequacy inquiry, for example, factors in competency and conflicts of class counsel, which the typicality requirement does not."  Beck, 457 F.3d at 296 n.2 (citation omitted).

singled out; instead, they allege that they suffered harm as a result of the same conduct that

allegedly injured the absentee class members.  See In re Prudential, 148 F.3d 312 (holding that

"the various forms [the class representatives'] injuries may take do not negate a finding of

typicality, provided the cause of the injuries is some common wrong).  Thus, the typicality

requirement is preliminarily satisfied here.  There may be individual differences with respect to

property damages or an individual's level of exposure (e.g., length of residence in the Village),

but these differences are not relevant to liability; if proven, the alleged course of conduct is the

common cause of any damages suffered by the members of both classes.

### 4.    Adequacy

Class representatives must "fairly and adequately protect the interests of the class."  Fed.

R. Civ. P. 23(a)(4).  The adequacy inquiry "serves to uncover conflicts of interest between named

parties and the class they seek to represent."  Beck, 457 F.3d at 296 (quoting Amchem, 521 U.S.

at 625).  It "assures that the named plaintiffs' claims are not antagonistic to the class and that the

attorneys for the class representatives are experienced and qualified to prosecute the claims on

behalf of the entire class."  Id. (quoting Baby Neal, 43 F.3d at 55).  Thus, the Court must

determine "whether the representatives' interests conflict with those of the class and whether the

class attorney is capable of representing the class."  Johnston, 265 F.3d at 185.

Here, the Court preliminarily concludes that Plaintiffs' counsel and the class

representatives are adequate to represent the interests of the class.  Facing experienced and

diligent defense counsel, counsel has vigorously pursued this lawsuit, successfully resisted

several motions for partial summary judgment, and ably represented the class members in various

discovery disputes.  With respect to the class representatives, there do not appear to be any conflicts between any subsets of class members and their representatives.  Notably, the Medical Monitoring Settlement Class consists of exposure-only individuals, thus eliminating any potential conflicts between individuals with current physical injuries and individual who have been exposed, but at this time have not suffered any other physical injury.

In sum, the proposed settlement classes satisfy the requirements of Rule 23(a).

The Court next turns to the requirements set forth in Rule 23(b).

**B.      Rule 23(b)**

Here, the Plaintiffs assert that the Medical Monitoring Settlement Class is appropriate for certification under subsections (2) and (3) of Rule 23(b), and the Property Damages Settlement Class is appropriate for certification under Rule 23(b)(3).

**1.      Rule 23(b)(2)**

Rule 23(b)(2) provides that a class action may be maintained where the party opposing the class has acted or refused to act on grounds generally applicable to the class.  Fed. R. Civ. P. 23(b)(2).  Here, the Medical Monitoring Settlement Class seeks injunctive relief in the form of a court-ordered funded medical monitoring program.  The Settlement provides for a "baseline" MRI screening that would be used as a starting point for subsequent monitoring.

In determining whether to certify a class under Rule 23(b)(2), courts consider whether individual issues will affect the "cohesion" of the class action.  Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998).  Cohesion is required for two reasons.  First, unnamed class members with valid individual claims are bound by the action without the opportunity to

14

withdraw and may be prejudiced by a negative judgment in the class action.  Id. at 143 (citation

omitted).  In other words, the Court "must ensure that significant individual issues do not

pervade the entire action because it would be unjust to bind absent class members to a negative

decision where the class representatives' claims present different individual issues than the

claims of the absent members present."  Id.  Second, "the suit could become unmanageable and

little value would be gained in proceeding as a class action . . . if significant individual issues

were to arise consistently."  Id. (citation omitted).

      Accordingly, the district court has the "discretion to deny certification in Rule 23(b)(2)

cases in the presence of 'disparate factual circumstances.'"  Geraghty v. United States Parole

Commission, 719 F.2d 1199, 1205-06 (3d Cir. 1983) (citation omitted); Rice v. City of

Philadelphia, 66 F.R.D. 17, 20 (E.D. Pa. 1974) (holding that a case should not proceed as a (b)(2)

action where "virtually all of the issues would have to be litigated individually in order to

determine whether a particular alleged class member was entitled to any damages at all").

      Certification under Rule 23(b)(2) is also inappropriate where many putative class

members "have nothing to gain from an injunction, and the declaratory relief they seek serves

only to facilitate the award of damages."  Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 317

(5th Cir. 2007); see also Miller v. Hygrade Food Prods. Corp., 198 F.R.D. 638, 641 (E.D. Pa.

2001) ("Where a class seeks monetary relief, the class becomes less cohesive because assessing

these damages often necessitates an examination into individual claims.").

      Here, certification of the Medical Monitoring Settlement Class under Rule 23(b)(2) is

appropriate.  First, the "cohesion" requirement is satisfied.  There are no apparent individual

differences with respect to the benefit of medical monitoring, or the type of monitoring that is most appropriate, because according to the Plaintiffs, there is a minimum, "danger point" of exposure.  Once this minimum level of exposure is reached, individual differences in the amount of exposure, while perhaps increasing the statistical likelihood that an individual may develop a physical injury, do not affect the alleged basic need for medical monitoring that is common to all class members.  Second, the class members will be sufficiently compensated by injunctive relief. Because the class members exclusively seek some form of medical monitoring, they have nothing to gain from monetary relief beyond funding for the costs of any such monitoring.  The value of any "medical monitoring" is the medical screening itself, not any monetary sum.

### 2.   Rule 23(b)(3)

The Plaintiffs also seek to certify both classes under Rule 23(b)(3).  In order to certify an opt-out class under Rule 23(b)(3), the Court must make two additional findings: predominance and superiority.  "Issues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation."  In re Prudential, 148 F.3d at 313-14.

### a.   Predominance

Amchem is widely considered to provide the definitive guidance for evaluating Rule 23(b)(3) classes.  The Amchem class, which included members exposed to different levels of abestos in different locations, failed the predominance inquiry because of the disparate questions facing class members, based in part on their differing levels of exposure, their differing medical histories, and the presence of exacerbating conditions such as smoking.  The Amchem class was

also undermined by the schism between the differing medical needs of currently injured class members and exposure-only claimants.

None of the problems fatal to certification in <u>Amchem</u> are present here.  Because both proposed classes seek relief based on exposure alone, individual differences in medical histories, lifestyles and property uses do not affect the causation analysis for purposes of liability.  Indeed, many of the claims are based on nothing more than the mere fact of a minimum level of exposure – the so-called "danger point" that triggers a heightened risk of cancer.  According to the Plaintiffs, the question of whether to institute a medical monitoring regime will be made without reference to the variation in exposure among class members or their individual medical histories.  And, in any event, "the presence of individual questions does not *per se* rule out a finding of predominance."  <u>In re Prudential</u>, 148 F.3d at 315.  Lastly, as previously noted, there is no conflict between exposure-only and currently injured class members because currently injured class members are explicitly excluded from both classes.

With respect to the Property Damages Settlement Class in particular, the common question of whether there was exposure dominates the individual issues as to the amount of exposure, which may vary from well to well, or the actual decrease in property value.  <u>See</u> <u>Mejdrech v. Met-Coil Sys. Corp.</u>, 319 F.3d 910 (7th Cir. 2003) (holding that individual questions as to whether TCE contamination reached class members' properties and whether harm was suffered did not predominate over classwide issues such as whether defendant leaked TCE in the first place).  In sum, the proposed settlement classes satisfy the predominance requirement.

17

b.      Superiority

Under Rule 23(b)(3), the Court must also determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets forth several factors relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." In re Prudential, 148 F.3d at 316 (citation omitted).

Here, the Court concludes that for purposes of preliminary approval, the superiority requirement is satisfied. First, because the class excludes persons with current injuries, the stakes are not as high and the individual claims are, relatively speaking, small.[6] Consequently, many class members likely would not bring individual claims in the absence of a class action. Second, there are 23 – a relatively small number – individual suits currently pending in state courts, and all of the individual suits have been brought by persons with current injuries. This circumstance indicates what can be reasonably interpreted as a lack of interest on the part of exposure-only class members in filing individual suits. Third, concentration of the claims in

_____

[6] The Supreme Court has noted that the warning of the Advisory Committee for the 1966 revision of Rule 23 "continues to call for caution when individual stakes are high and disparities among class members great." Amchem, 521 U.S. at 625.

Pennsylvania is appropriate because it is the principal place of business of the primary target defendant, Rohm and Haas.  Lastly, manageability issues are not relevant here because the proposed classes are settlement classes.

In sum, under the circumstances presented here, the Court concludes that the class action device is, at least preliminarily, superior to other means of adjudication.

## II.    Reasonableness of the Proposed Settlement

The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  In re Linerboard Antitrust Litigation, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing In re General Motors Corp. Pick-up Truck Fuel Tank Product Liability Litigation, 55 F.3d 768, 785-86 (3d Cir. 1995)); see also In re Cendant Corp. Litigation, 264 F.3d 201, 233 n.18 (3d Cir. 2001).[7]

First, there is nothing to indicate that the proposed settlement is not the result of good faith, arms-length negotiations between adversaries.  In the nearly two years of litigation since

_____

[7] The Court of Appeals for the Third Circuit has adopted a nine-factor test to help district courts structure their final decisions to approve settlements as fair, reasonable, and adequate as required by Rule 23(e).  In re Prudential, 148 F.3d at 317 (citing Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir.1975)).  Those factors are: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  Girsh, 521 F.2d at 157.  At the preliminary approval stage, however, the Court need not address these factors, as the standard for preliminary approval is far less demanding.

this case was commenced in April 2006, all counsel have demonstrated vigorous and

independent lawyering in all respects, and the Court has no reason to doubt that the same is true

with respect to the proposed Settlement.  Moreover, the settlement negotiations included two full

days of mediation before an experienced mediator.  In addition, the proponents of the Settlement,

counsel for the settling parties, are experienced in class action and similar litigation.

Procedurally, the case is still at a relatively early stage, as the parties have not yet

officially conducted discovery on the merits.  However, the parties have engaged in two years'

worth of discovery related to class certification, in addition to contemporaneous discovery in the

individual claims brought in state court.  According to the Joint Motion, the parties have

produced "hundreds of thousands of pages of documents," conducted "dozens of depositions,"

and exchanged "hundreds of pages of expert reports."  (Joint Motion ¶ 3.)  There also has been

significant motion practice, including a plethora of discovery motions, multiple motions for

partial summary judgment and a motion for judgment on the pleadings.  In addition, the parties

have engaged numerous experts and exchanged their respective expert reports.  Because the

parties have engaged in extensive discovery, though ostensibly only related to class certification,

as well as substantive issues motion practice, the Plaintiffs' claims have been challenged, more

fully developed and narrowed.  Thus, the parties have conducted sufficient discovery to estimate

the merit and value of the Plaintiffs' case against Modine and reach a reasonable settlement.

Moreover, in this case, the litigation is likely to be (and thus far certainly has been)

protracted and expensive.  Plaintiffs concede that they "have not identified any link between

Modine and the alleged contamination of ground water referenced in the Complaint," and that

"Modine was, at most, only a relatively small contributor to the alleged contamination of air

20

asserted in the Complaint." (Joint Motion at ¶ 3.) Thus, the attendant risks of litigation for the Plaintiffs are relatively and admittedly high with respect to Modine. This factor also weighs in favor of the reasonableness of the proposed Settlement.

In sum, the Court concludes[8] that the proposed Settlement is within the range of reasonableness and is not obviously deficient in any respect. Thus, preliminary approval is appropriate.

## III.   Plan for Notice and Fairness Hearing

### A.   Class Notice

Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> **(i)** the nature of the action;
>
> **(ii)** the definition of the class certified;
>
> **(iii)** the class claims, issues, or defenses;
>
> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
>
> **(v)** that the court will exclude from the class any member who requests exclusion;
>
> **(vi)** the time and manner for requesting exclusion; and
>
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

---

[8] At this juncture, the Court cannot consider the objections of class members as none have yet been filed.

21

Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Fed. R. Civ. P. 23(e).  The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'"  In re Prudential, 148 F.3d at 326-27 (quoting 2 Newberg on Class Actions § 8.32, at 8-109).

Notice to the putative class members is essential to providing each member with due process because members of the settlement classes will be bound to the resolution of this case with respect to Modine unless they opt out.  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-14 (1950).  Because the settlement will have been preliminarily approved by way of this Memorandum and Order, notice of the certification and the proposed settlement can be combined.  Collier v. Montogomery County Housing Auth., 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing Manual for Complex Litigation § 30.212, at 226).

Here, the parties propose that within 30 days following the entry of the order granting preliminary approval of the proposed Settlement Agreement, Plaintiffs' counsel will cause an official notice and claims form to be sent to each mailing address in McCullom Lake Village.  Where the owners or the individuals residing at a particular address are known to Plaintiffs' counsel, a separate, additional notice will be mailed to each such person.  Notice will also be published in (i) the Northwest Herald, once on a weekday and once on a Sunday; (ii) one edition of the Chicago Tribune; and (iii) one edition of the Chicago Sun Times.  (Settlement Agreement at 7-8.)

The proposed notice provides a description of the litigation, the settlement class, and the terms of the proposed settlement, including the proposed available relief.  It sets out information concerning the fairness hearing, including the date of the hearing, the opportunity for class members to appear at the hearing, and the procedure for filing objections with the Court.  The notice also explains the consequences for class members who remain in the class, as well as the consequences for those who opt out or take no action at all.  Finally, the notice includes information about class counsel, attorneys' fees, and a toll-free number and website for more information.

Both the method for disseminating the notice to class members and the content of the proposed notice meet the requirements of due process and the Federal Rules of Civil Procedure.  Here, because the settlement classes are defined geographically, publication in regional newspapers in addition to notice sent to each mailing address in McCullom Lake Village is likely to reach most of the class members, excepting only those who no longer live in the area, have no further postal forwarding benefits and do not read the designated newspapers.  Cf. In re Prudential, 148 F.3d at 327 (holding that mailings to last known address of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).  The content of the notice provides all of the required information concerning class members' rights and obligations under the proposed Settlement.  It details the procedures for opting out, entering an appearance, submitting claims and filing objections, and notifies class members of the consequences of their choices.  The notice also explains the nature of the claims covered under the Settlement Agreement and the possible relief available.  Under these circumstances, the proposed notice is consistent with the requirements of due process and the Federal Rules.

23

**B.**     **Notice to Government Regulators**

Thus far, the parties have satisfied their obligations under 28 U.S.C. § 1715 to provide

notice to governmental regulators.  Within ten days of the filing with the Court of the proposed

Settlement Agreement, Modine duly served upon the Attorney General of the United States, the

Attorney General for the State of Illinois, and the Director of the Illinois Environmental

Protection Agency the materials required to satisfy the disclosure requirements of Section 1715.

**C.**     **Administration**

The parties have represented to the Court that if the Court preliminarily approves the

Settlement Agreement, Plaintiffs' counsel will establish a website or add a page to counsel's

firm's website for purposes of publishing the official notice and claim forms, as well as the terms

of the proposed Settlement.  The website will also serve as a means for submission of inquiries

and correspondence regarding the Settlement.  In addition, Plaintiffs' counsel will also establish

and provide for staffing of a toll-free telephone number for inquiries regarding the Settlement.

(Settlement Agreement at 8.)

The Settlement Agreement also provides that Class Counsel shall retain a suitable

Settlement Administrator to assist in arranging the various forms of notice to the Settlement class

members and administering payments under the terms of the Settlement.  (Settlement Agreement

at 7.)  The costs of the administration of the Settlement Agreement will be paid out of the

proposed $500,000 fund designated for Plaintiffs' attorneys' fees and administration costs.  Thus,

the costs of administration will not diminish the Settlement Classes' recovery.

The Court concludes that the settling parties' proposed plan is a reasonable and adequate

method for managing notice and the administration of the Settlement.

D.      **Opt-Out/Exclusion Requests, Objections by Class Members, and Submission of Settlement Claims**

Pursuant to the terms of the Settlement Agreement, class members will have 60 days from the mailing of the Notice of Proposed Settlement to opt out by providing a written directive to Plaintiffs' counsel.  Class members likewise will have 60 days from the mailing of the Notice of Proposed Settlement to file an objection to final approval of the proposed Settlement.

Class members have until the date the settlement becomes final to submit a claim under the proposed Settlement.  Members of the Settlement Classes who fail to take action before that time will be bound by the Settlement, but will not be eligible to receive Settlement funds or other relief, unless there are funds remaining after payment of all Allowed Medical Monitoring Claims. (Settlement Agreement at 10.)  Members of the Medical Monitoring Class must make themselves available for the screening procedure within six months of the date the Settlement Agreement becomes final, or forfeit their right to participate in the medical monitoring relief.  (Settlement Agreement at 12.)

The Court concludes that the time limitations for opting out, filing objections and submitting claims are fair and reasonable.  The members of the classes have adequate time to evaluate the Settlement Agreement and take the appropriate actions to protect their interests.

**CONCLUSION**

In sum, upon consideration of the procedural history of this litigation, the experience, conduct and intentions of settling parties' counsel and the proposed Settlement as a whole, at this

stage, the Court concludes that preliminary approval is warranted.  An Order consistent with this Memorandum and setting forth the Court's findings follows.


BY THE COURT:



S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENN GATES, <u>et al.</u>,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROHM AND HAAS COMPANY, <u>et al.</u>,** | : | |
| **Defendants** | : | **NO. 06-1743** |

## <u>ORDER</u>

AND NOW, this 20th day of February, 2008, upon consideration of the Joint Motion for

Preliminary Approval of Proposed Settlement (Doc. No. 155), Plaintiffs' Supplemental

Memorandum (Doc. No. 156), the Memorandum stating the position of Rohm and Haas with

respect to the proposed settlement (Doc. No. 166), and the Supplemental Motion for Preliminary

Approval (Doc. No. 168), IT IS HEREBY ORDERED that the Joint Motion for Preliminary

Approval (Doc. No. 155) and the Supplemental Motion for Preliminary Approval (Doc. No. 168)

are both GRANTED consistent with the accompanying Memorandum and as outlined in this

Order.

Based on the Court's review of the proposed Settlement Agreement and the submissions

of the parties, and having conducted a hearing on the matter, the Court determines as follows:

A.      The Court preliminarily finds that with respect to the proposed Settlement

between and among Plaintiffs and Defendant Modine Manufacturing Company, the applicable

requirements of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure are

satisfied.

B.      The proposed Settlement is preliminarily determined to be fair, reasonable, and adequate and is preliminarily approved, and dissemination of notice of the proposed Settlement to the Settlement Classes is allowed.

C.      For purposes of effectuating the proposed Settlement, this action is conditionally certified for settlement purposes only as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed Settlement Classes:

(i)  The "Medical Monitoring Settlement Class" consists of all persons who lived for one year or more in total (whether consecutively or not) within McCullom Lake Village during the time period from January 1, 1968 to December 31, 2002.  Excluded from the class are individuals for whom a brain tumor has been detected prior to the date of the Settlement Agreement, i.e., January 18, 2008, and individuals who have already filed personal injury claims in any court of competent jurisdiction arising out of exposure to chlorinated solvents as of the date of the Settlement Agreement.

(ii)  The "Property Damage Settlement Class" consists of all persons who have directly held an equity ownership interest in real property within McCullom Lake Village at any time between April 25, 2006 (the date of the filing of the Complaint) to the date of this Settlement Agreement.  Excluded from the Class are individuals for whom a brain tumor has been detected prior to the date of the Settlement Agreement, i.e., January 18, 2008, and individuals who have already filed personal injury claims in any court of competent jurisdiction arising out of exposure to chlorinated solvents as of the date of the Settlement Agreement.

D.      Plaintiffs Glenn and Donna Gates are preliminarily determined to be adequate

2

representatives for the proposed Settlement Classes and are so appointed preliminarily, and that Aaron J. Freiwald, Esq. and the law firm of Layser & Freiwald, P.C. are preliminarily determined to be adequate as Class Counsel for the proposed Settlement Classes and are so appointed preliminarily.

E.     The proposed form and methods of Notice as described in Part V of the proposed Settlement Agreement are fair, reasonable, and adequate and consistent with requirements of Due Process and the Federal Rules of Civil Procedure.

F.     Modine's plan for providing disclosures of the proposed Settlement to appropriate governmental officials, as set forth in Paragraph V.E. of the Settlement Agreement, satisfies the requirements of 28 U.S.C. § 1715.

G.     The members of either of the proposed Settlement Classes may opt out of the proposed Settlement by following the procedures set forth in Paragraph VI of the Settlement Agreement.

H.     If Plaintiffs report that more than 25 individuals have chosen to opt out of either proposed Settlement Class, and if Modine elects to withdraw from the proposed Settlement as provided for in Part XI of the Agreement due to the reported number of opt outs, Modine shall notify the Court and all counsel of record of its decision no later than ten days prior to the date of the Fairness Hearing; provided, however, that this Paragraph shall not limit Modine's right to withdraw from the proposed Settlement for any other reason provided for in the proposed Settlement.

3

I.      The members of either of the proposed Settlement Classes may object to the Settlement by submitting any such objections at the time and in the manner and set forth in Part VII of the Settlement Agreement and as described in the approved notice.

J.      The parties shall jointly move for final approval of the proposed Settlement thirty (30) days prior to the scheduled date of the Final Approval Hearing, and that a briefing schedule as to that motion be set.

K.      A Fairness Hearing shall be held to consider final approval of the proposed Settlement approximately 120 days after the date of this Order, commencing on **June 24, 2008 at 10:00 a.m.**

L.      This action is stayed solely as to Modine pending the outcome of the Fairness Hearing, and is not stayed as to any other party or entity in any manner.

M.      The entry of this Order is without prejudice to any of the defenses and positions of the non-settling defendants as to any issue, including, without limitation, the issue of whether or not the alleged classes, or any classes, could or should appropriately be certified as litigation classes.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

4