**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENN GATES, ET AL.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROHM AND HAAS COMPANY,** | : | |
| **ET AL.,** | : | |
| **Defendants** | : | **NO. 06-1743** |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, J.                                                                AUGUST 22, 2008

Glenn and Donna Gates on behalf of themselves and all others similarly situated sued

Modine Manufacturing Company and others pursuant to the Comprehensive Environmental

Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and

state law for damages allegedly resulting from contamination by pollutants generated and

released by Modine, among others.

In January 2008, the Plaintiffs and Modine entered into a Settlement Agreement to

resolve the claims Plaintiffs asserted against Modine on behalf of themselves and two proposed

Settlement Classes. After full briefing and oral argument before the Court, on February 20,

2008, the Court preliminarily determined that the proposed Settlement Classes met the

requirements of Rule 23 and that the Settlement was within the range of reasonableness. <u>See</u>

<u>Gates v. Rohm and Haas Co.</u>, 248 F.R.D. 434 (E.D. Pa. 2008). The Plaintiffs and Modine now

jointly move for Final Approval of the Settlement Agreement. A final fairness hearing was held

on June 24, 2008.[1]

---

[1] In accordance with the Court's February 20, 2008 Order, the parties provided notice to
the putative Settlement Classes in the form of mailed notice and publication.

**THE SETTLEMENT AGREEMENT**

The Settlement Agreement provides for the payment of up to $2,000,000, which will be allocated between two separate Settlement Classes.

The proposed Settlement Classes are (1) Medical Monitoring Settlement Class and (2) Property Damage Settlement Class.  The Medical Monitoring Settlement Class is defined to include all persons who lived for one year or more in total (whether consecutively or not) within McCullom Lake Village during the time period from January 1, 1968 to December 31, 2002. The Property Damage Settlement Class is defined to include all persons who have held an ownership interest in real property within McCullom Lake Village at any time between April 25, 2006 (the date of the filing of the Complaint) to January 18, 2008.  Excluded from both classes are individuals for whom a brain tumor has been detected prior to January 18, 2008 (the date of the Settlement Agreement) and/or individuals who have already filed personal injury claims in any court of competent jurisdiction arising out of exposure to chlorinated solvents as of January 18, 2008.

The funds are to be allocated as follows:

(i)     A fund of $1,400,000 dollars for payments to Medical Monitoring Settlement Class claimants, allowing for reimbursement of up to $1,400 for any Medical Monitoring Settlement Class member to obtain an MRI or other appropriate screening or test;

(ii)    A fund of $100,000 for payments to Property Damage Settlement Class claimants, allowing for a maximum payment of $1,000 per property (to be shared pro rata if there are multiple claimants to a single property);

(iii)    Up to $500,000 for Court-approved attorneys' fees and all settlement

administration costs, including the costs of a Claims Administrator and notice

costs related to the Settlement.

**DISCUSSION**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a

certified class may be settled, voluntarily dismissed, or compromised only with the court's

approval." Fed. R. Civ. P. 23(e).  The following procedures apply to a proposed settlement,

voluntary dismissal, or compromise:

> **(1)** The court must direct notice in a reasonable manner to all class
> members who would be bound by the proposal.
> **(2)** If the proposal would bind class members, the court may approve
> it only after a hearing and on finding that it is fair, reasonable, and adequate.
> **(3)** The parties seeking approval must file a statement identifying any
> agreement made in connection with the proposal.
> **(4)** If the class action was previously certified under Rule 23(b)(3),
> the court may refuse to approve a settlement unless it affords a new
> opportunity to request exclusion to individual class members who had
> an earlier opportunity to request exclusion but did not do so.
> **(5)** Any class member may object to the proposal if it requires court
> approval under this subdivision (e); the objection may be withdrawn
> only with the court's approval.

Fed. R. Civ. P. 23(e).  "The decision of whether to approve a proposed settlement of a class

action is left to the sound discretion of the district court."  In re Prudential Ins. Co. Am. Sales

Practice Litigation Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998).

**I.    Certification of the Settlement Classes Under Rule 23**

Where, as here, the Court has not already certified a class, the Court initially must

determine whether the proposed settlement classes satisfy the requirements of Rule 23.  Amchem

v. Windsor, 521 U.S. 591, 620 (1997).  For the reasons discussed in the Court's Memorandum

and Order of February 11, 2008, the Court finds that the proposed Settlement Classes meet the requirements of Rule 23(a) and Rule 23(b)(2) and (b)(3).  See Gates, 248 F.R.D. at 439-444.

## II.    Reasonableness, Fairness and Adequacy of the Settlement

Even if the requirements for certification under Rule 23 are met, a class action cannot be settled without the approval of the court and a determination that the proposed settlement is "fair, reasonable and adequate."  Prudential, 148 F.3d at 316-317 (quoting In re General Motors Corp. Pick-up Truck Fuel Tank Product Liability Litigation, 55 F.3d 768, 785 (3d Cir. 1995)). Pursuant to Rule 23(e), the trial judge has the duty of protecting absentee class members, and the Court executes this duty by "assuring the settlement represents adequate compensation for the release of the class claims."  Id.

In determining the fairness of a proposed settlement, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  Id. (citing General Motors, 55 F.3d at 806).  At the same time, however, where, as here, the parties simultaneously seek certification and settlement approval, the Court must be "even more scrupulous than usual" when examining the fairness of the proposed settlement.  Id. "This heightened standard is designed to ensure that class counsel has demonstrated "sustained advocacy" throughout the course of the proceedings and has protected the interests of all class members.  Id.

In Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975), the Third Circuit Court of Appeals set forth "appropriate factors to be considered when determining the fairness of a proposed settlement."  Prudential, 148 F.3d at 317.  Those factors are:

4

(1) the complexity, expense and likely duration of the litigation . . .;
(2) the reaction of the class to the settlement . . .;
(3) the stage of the proceedings and the amount of discovery completed . . .;
(4) the risks of establishing liability . . .;
(5) the risks of establishing damages . . .;
(6) the risks of maintaining the class action through trial . . .;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .;
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

Id. (quoting Girsh, 521 F.2d at 156).

In addition, the following factors also may be relevant to this inquiry.

(1) Whether the prerequisites set forth in subdivisions (a) and (b) [of Rule 23] have been met;
(2) Whether the class definition is appropriate and fair, taking into account among other things whether it is consistent with the purpose for which the class is certified, whether it may be overinclusive or underinclusive, and whether division into subclasses may be necessary or advisable;
(3) Whether persons with similar claims will receive similar treatment, taking into account any differences in treatment between present and future claimants;
(4) Whether notice to members of the class is adequate, taking into account the ability of persons to understand the notice and its significance to them;
(5) Whether the representation of members of the class is adequate, taking into account the possibility of conflicts of interest in the representation of persons whose claims differ in material respects from those of other claimants;
(6) Whether opt-out rights are adequate to fairly protect interests of class members;
(7) Whether provisions for attorneys' fees are reasonable, taking into account the value and amount of services rendered and the risks assumed;
(8) Whether the settlement will have significant effects on parties in other actions pending in state or federal courts;
(9) Whether the settlement will have significant effects on potential claims of class members for injury or loss arising out of the same or

related occurrences but excluded from the settlement;
(10) Whether the compensation for loss and damage provided by the settlement is within the range of reason, taking into account the balance of costs to defendant and benefits to class members; and
(11) Whether the claims process under the settlement is likely to be fair and equitable in its operation.

Id. at 323-24 n.73 (citing William Schwarzer, Settlement of Mass Tort Class Actions: Order Out of Chaos, 80 Cornell L. Rev. 837, 843-44 (1995)).

A.     The Girsh Factors

1.     The complexity, expense and likely duration of the litigation.

Under the first Girsh factor, the Court must analyze "'the probable costs, in both time and money of continued litigation.'  By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the case amicably." General Motors, 55 F.3d at 812 (quoting Bryan v. Pittsburg Plate Glass Co., 494 F.2d 799, 801 (3d Cir. 1974)).

Here, the litigation is likely to be (and thus far has been) protracted and expensive.  The case has been pending for over two years and the parties have not yet officially engaged in merits discovery.  The liability and damages issues are extremely complex, requiring extensive scientific, technical and modeling evidentiary submissions.  Prior to trial, there undoubtedly will be Daubert motions, summary judgment motions and motions in limine, and after trial, appeals almost certainly will follow.  The Settlement avoids years of expense, delay and uncertainty.  See Prudential, 148 F.3d at 318 ("[W]e conclude the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court.  The prospect of such a massive undertaking clearly counsel in favor of settlement."); Lazy Oil Co. v. Witco, 95 F. Supp. 2d 290, 297 (W.D. Pa. 1997) ("The Settlement provides

6

benefits to the Class years earlier than would be possible if the case proceeded to trial and

subsequent appeals. . . . [T]he Settlement not only avoids the substantial risks and uncertainties

inherent in further litigation, it also obviates the need for expensive and protracted litigation.").

Thus, the first <u>Girsh</u> factor weighs in favor of approval of the Settlement.

### 2.     The reaction of the class to the Settlement.

This factor "attempts to gauge whether members of the class support settlement."

<u>Prudential</u>, 148 F.3d at 318.  A low number of objectors and opt-outs is an indication of the

fairness of a settlement.  <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 536 (3d Cir.

2004).  To date, some 435 medical monitoring claims and 164 property claims have been

submitted.  (Modine Mem. 6.)  The fact that a large number of class members have already

submitted claim forms demonstrates "considerable satisfaction with the results of the litigation."

<u>Fisher Bros., Inc. v. Mueller Brass Co.</u>, 630 F. Supp. 493, 498 (E.D. Pa. 1985).  In addition, the

claim period will remain open through the date on which the Settlement Agreement becomes

final.  Initially, 14 individuals sought to "opt out" from the Settlement Classes, but five of those

individuals have, with Modine's consent, withdrawn their request to opt out.  (Motion ¶ 8.)

Thus, a total of only nine individuals still wish to opt out of the Settlement.

Five individuals have asserted objections, but none cites any legal authority in support of

the objector's position, and none cites any evidence or identifies any witnesses to be presented at

the Fairness Hearing.  The objections essentially state that the amount of consideration for both

medical monitoring and property damage is inadequate, and raise some concerns regarding

preclusion of future personal injury claims.  (<u>See</u> Modine Mem. Ex. A.)  At least one objector,

Mr. Anthony S. Koczor, expressed an intention to appear at the Fairness Hearing, but no

objectors appeared or submitted written testimony.  In sum, the overall reaction to the Settlement by the Settlement Classes appears to have been favorable.  This supports approval of the Settlement.

> **3.     The stage of the proceedings and the amount of discovery completed.**

This factor is intended to address "whether counsel had an adequate appreciation of the merits of the case before negotiating."  General Motors, 55 F.3d at 813.

Procedurally, the case is still at an early stage, as the parties have not yet officially conducted discovery on the merits.  However, the parties have engaged in two years worth of discovery related to class certification, in addition to discovery related to the individual claims brought in state court.  The parties contend that they have produced "hundreds of thousands of pages of documents," conducted "dozens of depositions," and exchanged "hundreds of pages of expert reports."  (Modine Mem. 5.)

In addition, there also has been significant motion practice, including a plethora of discovery motions, multiple motions for partial summary judgment and a motion for judgment on the pleadings.  The parties have engaged numerous experts and exchanged expert reports. Because the parties have engaged in extensive discovery, though ostensibly only related to class certification, as well as motion practice, the Plaintiffs' claims have been challenged, more fully developed and narrowed.  See In re Lucent Techs., Inc. Sec. Litig., 307 F. Supp. 2d 633, 638 (D.N.J. 2004) (discovery, outside investigation, extensive motion practice and settlement negotiations shed light "on the strengths and weaknesses of the case, the risks of litigation, and the issues the Class would face at trial.").  Thus, this factor also weighs in favor of approval of the Settlement.

**4 & 5.  The risks of establishing liability and damages against Modine.**

The fourth and fifth <u>Girsh</u> factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." <u>Prudential</u>, 148 F.3d at 319.  In examining these factors, the Court "need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" <u>Perry v. FleetBoston Fin. Corp.</u>, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (<u>quoting</u> <u>Lachance v. Harrington</u>, 965 F. Supp. 630, 638 (E.D. Pa. 1997)).

Here, the Plaintiffs run a high risk in pursuing litigation because it likely will be difficult to establish liability against Modine.  The expert reports indicate that thus far there are no elevated levels of vinyl chloride in the class members' wells.  Consequently, the Plaintiffs' theory of vinyl chloride contamination likely will be more difficult to prove and less persuasive, making litigation more risky.  In addition, the Plaintiffs concede that they have not yet identified "any link between Modine and the alleged contamination of ground water."  (Motion ¶ 1.)  <u>See</u> <u>In re Aetna Inc.</u>, 2001 WL 20928, at *9 (E.D. Pa. Jan. 4, 2001) ("If further litigation presents a realistic risk of dismissal on summary judgment or an exonerating verdict at trial, the plaintiffs have a strong interest to settle the case early.").

Although establishing damages does not pose the same difficulties as establishing liability, proof of the need for medical monitoring nonetheless is by no means a foregone conclusion even if liability is established.  Such proof would require complex scientific and medical analysis regarding exposure levels and the risk of latent diseases.  Similarly, proof of

property damage would also likely require real estate experts and valuations of individual properties.  Thus, these factors also weigh in favor of approval of the Settlement.

### 6.      The risks of maintaining the class action through trial.

The court of appeals has questioned the applicability of this factor in "settlement-only" class actions following the Supreme Court's decision in <u>Amchem</u>, which held that a court evaluating a settlement-only class action need not consider the issue of trial manageability in determining whether a proposed settlement class meets the requirements of Rule 23.  In <u>Amchem</u>, the Supreme Court held that a district court could take settlement into consideration when deciding whether to certify a class, and that, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  521 U.S. at 620. Citing <u>Amchem</u>, the court of appeals noted that "[i]t would seem, therefore, that after <u>Amchem</u> the manageability inquiry in settlement-only class actions may not be significant."  <u>Prudential</u>, 148 F.3d at 321.

Even if this factor were applied in the present case, it would weigh in favor of approval of the Settlement.  Given the myriad of merits issues that are interconnected with class certification issues in this action, there are significant manageability issues and a risk of decertification.

### 7.      The ability of the defendants to withstand a greater judgment.

Courts typically view this factor as neutral where the parties concede that the defendant is able to withstand a greater settlement.  <u>Warfarin</u>, 391 F.3d at 538.  Here, however, Modine contends that it faces difficult financial challenges and has incurred losses over the past fiscal year.  As noted in its May 27, 2008 News Release Report on Fourth Quarter and Full Year Fiscal

2008, fiscal 2008 was "difficult" and the fiscal fourth quarter "was particularly challenging for Modine as [it] took additional and necessary steps to address underlying business performance issues." (See Modine Mem. Exs. B, C.) Thus, this factor is either neutral or weighs in favor of approval of the Settlement.

### 8 & 9.  The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation.

The last two Girsh factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" Prudential, 148 F.3d at 322 (quoting General Motors, 55 F.3d at 806). In other words, these factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." Warfarin, 391 F.3d at 538. Although the Court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, "it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard." Aetna, 2001 WL 20928, at *11.

Here, the Settlement must be measured against the best possible recovery against *Modine*, rather than the expected recovery from all defendants. Notwithstanding Plaintiffs' concessions as to the relative lack of evidence against Modine, the Settlement provides an aggregate settlement value of $2,000,000, of which $1,500,000 is available to pay claims of Settlement Class members.

As consideration for the release of medical monitoring and property damage claims, the anticipated recovery for each class member is reasonable in light of the Plaintiffs' admittedly weak case against Modine. While one initial examination or screening merely will establish a baseline, and other screenings will be necessary in the future in order to detect any abnormalities, it is nonetheless reasonable compensation given that "the attendant risks of litigation for the Plaintiffs are relatively and admittedly high with respect to Modine." Gates v. Rohm and Haas Co., 248 F.R.D. at 444-45. The same trade-off is true with respect to the property damage claims. The Settlement eliminates the need for – and the risk of – proving on an individual basis property damage attributable to Modine. These factors also weigh in favor of the reasonableness of the proposed Settlement.

In sum, the Girsh factors tend to favor final approval of the Settlement.

**B.      Other Factors Relevant to Fairness**

In addition to the Girsh factors, other factors the Court may consider include (1) the effect of the Settlement on future personal injury claims; (2) treatment of class representatives; (3) the reasonableness of the attorneys' fees; and (4) the appropriateness of the claims process.

**1.      Effect on Potential Future Claims**

The Settlement Agreement does not release "future personal injury claims, other than any such future claims that are associated or believed to be associated with any medical monitoring procedure that a claimant may elect to undergo." (Settlement Agreement at 20.) This eliminates the possibility that future personal injury claims against Modine arising from the alleged exposure will be barred. As previously discussed, persons who *presently* have been diagnosed with brain cancer are explicitly excluded from both Settlement Classes. Persons with other

12

present exposure-related physical injuries besides brain tumors are *not* excluded the Settlement

Classes because these persons, notwithstanding any other infirmity, have a similar interest in

detecting brain cancer.

### 2.   Treatment of Class Representatives

Pursuant to the Settlement Agreement, the Class Representatives each will receive an

additional $1000, which will be taken out of the $500,000 fund for attorneys' fees and settlement

administration costs.  Given the complex and protracted nature of this litigation, this amount is

not unreasonable or unfair, and will not reduce the amount recovered by other class members.

### 3.   Reasonableness of Attorneys' Fees and Costs

In conjunction with the joint Motion for Settlement, Class Counsel seeks entry of an

Order awarding them $500,000 from the Settlement Amount for fees and costs associated with

the ongoing litigation of this case.  The Class Notice informed the class members about the

requested award of fees and costs, and no class member has objected, including those who

objected to the Settlement Agreement on other grounds.

Counsel in common fund cases are entitled to compensation for expenses that are

reasonably incurred in the prosecution of the litigation.  See, e.g., In re Corel Corp. Sec. Litig.,

293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) ("There is no doubt that an attorney who has created a

common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation

expenses from that fund."); Meijer, Inc. v. 3M, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006)

(granting Plaintiffs' motion for approval of expenses "incurred in connection with the

prosecution and settlement of the litigation, and including costs related to the following: travel;

computerized legal research; copying; postage; telephone and fax; transcripts; retention of a

mediator; the document database; expert services; and claims administration").

In light of the nearly two years of extensive discovery and motion practice in this case, the Court concludes that an award of $500,000 in fees and costs is reasonable.

### 4.    The Claims Process

The Settlement Agreement provides that Class Counsel shall retain a suitable Settlement Administrator to assist in arranging the various forms of notice to the Settlement Class members and administering payments under the terms of the Settlement.  (Settlement Agreement at 7.) The costs of the administration of the Settlement Agreement will be paid out of the proposed $500,000 fund designated for Plaintiffs' attorneys' fees and administration costs.[2]

Under the terms of the Settlement Agreement, members of the Medical Monitoring Settlement Class must make themselves available for the screening procedure within 6 months of the date the Settlement Agreement becomes final or forfeit their right to participate in the medical monitoring relief.  (Settlement Agreement at 12.)  Claimants will not be directed toward any particular medical facility or any particular screening procedure; rather, they will be instructed as to how to obtain payment pursuant to the Settlement Agreement for the medical consultation, examination and/or procedure of their choosing.[3]

It bears emphasizing, however, that Class Members are under no obligation to participate in any particular screening procedure; rather, Class Members are free to continue to see their own

---

[2] At this time, the Plaintiffs have made the official long-form notice and claim forms, as well as the terms of the proposed Settlement available on an internet web site (see www.mccullomlakesettlement.com and www.hrsclaimsadministration.com), and established a toll-free number for inquiries regarding the Settlement.  (Motion ¶ 6.)

[3] Under no circumstances will any health care facility be provided with the claimants' contact information or be permitted to initiate contact with any claimants.

14

doctor or another doctor of their choice, and/or seek an MRI or other diagnostic procedure at the health care facility of their choice. It is the Court's understanding that the notice provided to Class Members will contain an affirmative statement to that effect.

Members of the Property Settlement Class will be mailed a check for their pro rata share of the $100,000 up to $1000 per property (an amount to be determined based upon the number of claimants).

### III.   Good Faith

The settling parties have jointly requested that the Court include in the Final Approval Order a complete Bar Order that will bar and enjoin the Plaintiffs, Settlement Class Members and all other persons from asserting any Released Claim against the Modine Released Parties. This includes a settlement contribution bar that applies to the non-settling defendants.

Under the Illinois Contribution Act, when a release or covenant not to sue is given in "good faith" to a person or entity liable in tort, the settling tortfeasor "is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(c)-(d). While the settling tortfeasor thus is not liable to any co-defendants, the rights of the non-settling defendants are protected to the extent that any judgment the plaintiff obtains against such non-settling parties is reduced "to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." Id.; Patton v. Carbondale Clinic, S.D., 641 N.E.2d 427, 434 (Ill. 1994).

The term "good faith" is not defined by the Act, but generally a showing by the settling parties that consideration has been paid for the settlement is sufficient to make a prima facie showing that the settlement was made in "good faith." Wreglesworth v. Arctco, Inc., 740 N.E.2d

444, 448-49 (Ill. App. 1st Dist. 2000).  Once such a prima facie showing is made, "a presumption

arises that the settlement is valid, and the burden shifts to the party challenging the settlement to

show by a preponderance of the evidence that it was not made in good faith."  Id.  Factors which

have been considered in determining whether a settlement was made in good faith include:

> (1) whether the amount paid by the settling tortfeasor was within a
> reasonable range of the settlor's fair share; (2) whether there was a
> close personal relationship between the settling parties; (3) whether
> the plaintiff sued the settlor; and (4) whether a calculated effort was
> made to conceal information about the circumstances surrounding the
> settlement agreement.

Id. (internal quotations and citations omitted).  Where there have been substantial proceedings

before the Court, discovery has been conducted, and the Court is familiar with the issues in a

case, a good faith finding can be made based on the existing record and on the motions and

argument of counsel.  Johnson v. United Airlines, 784 N.E.2d 812, 822 (Ill. 2003).

        Here, there is nothing to indicate that the Settlement Agreement is not the result of good

faith, arms-length negotiations.  It is the product of almost two years of contentious litigation and

months of negotiations, including two full days of mediation before an experienced mediator.

All counsel have demonstrated vigorous and independent lawyering throughout this case, and the

Court has no reason to doubt that the same is true with respect to the proposed Settlement.  In

addition, the proponents of the Settlement, counsel for the settling parties, are experienced in

class action and similar litigation.  Moreover, the Court has determined that the Settlement is

reasonable, fair and adequate under governing law.  Accordingly, the Court concludes that the

Settlement was reached in good faith within the meaning of 740 ILCS 100/2 and fully discharges

and extinguishes any claim against Modine for contribution or indemnity as to any other person

or entity.

**CONCLUSION**

For the foregoing reasons, the Court will grant final approval of the Settlement and Class

Counsel will be awarded $500,000 for fees and costs as designated by the Settlement

Agreement.[4]

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] This means, however, that Class Counsel will be responsible for paying the full cost of administration of the Settlement because this was to be funded out of the $500,000 in fees.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENN GATES, ET AL.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROHM AND HAAS COMPANY,** | : | |
| **ET AL.,** | : | |
| **Defendants** | : | **NO. 06-1743** |

**FINAL APPROVAL ORDER**

AND NOW, this 22nd day of , 2008, upon consideration of the Joint Motion for Final

Approval of the Proposed Settlement of Plaintiffs and Defendant Modine Manufacturing

Company (Docket No. 182), the Supplemental Joint Motion for Final Approval of the Proposed

Settlement (Docket No. 188), and all memoranda submitted in connection therewith, and

following a Fairness Hearing conducted on June 24, 2008 in accordance with Federal Rule of

Civil Procedure 23, it is hereby ORDERED that both Motions are GRANTED as outlined in this

Order and the accompanying Memorandum.

Based on the Court's review of the proposed Settlement Agreement and the submissions

of the parties, and having conducted a hearing on the matter, the Court determines and finds as

follows:

A.      The Court finds with respect to the Settlement Agreement between and among

Plaintiffs and Defendant Modine Manufacturing Company that the applicable requirements of

Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure are satisfied, and

accordingly certifies this action for settlement purposes only pursuant to Rule 23, on behalf of the

following Settlement Classes previously conditionally certified herein:

1.      The "Medical Monitoring Settlement Class" consists of all persons who

lived for one year or more in total (whether consecutively or not) within McCullom Lake Village during the time period from January 1, 1968 to December 31, 2002.  Excluded from the class are individuals for whom a brain tumor has been detected prior to the date of the Settlement Agreement, i.e., January 18, 2008, and/or individuals who have already filed personal injury claims in any court of competent jurisdiction arising out of exposure to chlorinated solvents as of the date of the Settlement Agreement.

        2.     The "Property Damage Settlement Class" consists of all persons who have directly held an equity ownership interest in real property within McCullom Lake Village at any time between April 25, 2006 (the date of the filing of the Complaint) to the date of this Settlement Agreement.  Excluded from the Class are individuals for whom a brain tumor has been detected prior to the date of the Settlement Agreement, i.e., January 18, 2008, and/or individuals who have already filed personal injury claims in any court of competent jurisdiction arising out of exposure to chlorinated solvents as of the date of the Settlement Agreement.

B.     The Settlement is hereby approved in accordance with the terms of the Settlement Agreement.  The terms of the Agreement are fair, reasonable, and adequate in respect to the Settlement Classes, and satisfy the <u>Girsh</u> factors.  In addition, the Settlement is a good faith settlement within the meaning of 740 ILCS 100/2 and fully discharges and extinguishes any claim against Modine for contribution or indemnity as to any other person or entity.

C.     Each member of the Settlement Classes who has not opted out shall be bound by this Agreement, including the release in Paragraph XIV of the Agreement.  All individuals or entities who have opted out of the settlement are identified in Attachment A to this Order.

D.     The notice given to the members of the Settlement Classes satisfied the

requirements of Due Process and the Federal Rules of Civil Procedure.

   E. Modine's disclosure of the proposed Settlement to appropriate government officials satisfied the requirements of 28 U.S.C. § 1715.

   F. Plaintiffs Counsel's litigation expenses and fees and settlement administration costs are hereby approved by the Court in the amount of five hundred thousand dollars ($500,000). The Court approves payments to Named Plaintiffs Glenn and Donna Gates from that amount, not to exceed one thousand dollars ($1,000) each.

   G. All claims against Modine in this action are dismissed with prejudice, and final judgment is entered thereon.

   H. Modine is discharged from all liability for any contribution to any other person or entity, and further actions against Modine are barred as follows:

     1. Plaintiffs and any and all members of the Settlement Classes are permanently barred, enjoined and restrained from commencing, prosecuting or asserting any Modine Released Claims[5] against the Modine Released Parties;[6]

     2. All other Persons, including without limitation all Non-Settling

---

[5] The term "Released Claims" is defined at paragraph XIV.A.1 of the Settlement Agreement, which definition is incorporated herein by reference. Released Claims do not include future claims based upon bodily injury, except that Medical Monitoring Claimants who undergo any medical monitoring procedure pursuant to the Settlement release any claim for harm or injury associated or believed to be associated with the medical monitoring procedure. (Settlement Agreement, ¶ XIV.A.3.)

[6] "Modine Released Parties" means Modine Manufacturing Company and its present, former and future parents, partners, subsidiaries, divisions, affiliates, stockholders, and insurers, and each of their respective officers, directors, employees, agents, and any of their legal representatives (and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, collectively or individually). (Settlement Agreement, ¶ I.L.)

Defendants who are, have been, could be, or could have been alleged to be joint tortfeasors, co-tortfeasors, co-conspirators, or co-obligors with any of the Modine Released Parties in respect to this litigation or in respect to any of the Released Claims are hereby, to the maximum extent permitted by law, barred and permanently enjoined from making, instituting, commencing, prosecuting, participating in or continuing any claim, claim-over, cross-claim, action, or proceeding, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, in this Court or in any other court or tribunal, against the Modine Released Parties or any of them with respect to the Released Claims, including without limitation equitable, partial, comparative, or complete contribution, set-off, indemnity, assessment, or otherwise, whether by contract, common law or statute, arising out of or relating in any way to the Released Claims.  The Released Parties are hereby discharged from any and all such liability, and such liability is fully extinguished, in light of Modine's good faith settlement with Plaintiffs and the Settlement Classes.  All such claims are hereby fully and finally discharged, extinguished, released, barred, satisfied, and made unenforceable to the maximum extent permitted by law, and no such claim may be commenced, maintained, or prosecuted against any Modine Released Party.  Any judgment or award obtained by Plaintiffs or a Settlement Class Member against any such Non-Settling Defendant or third party shall be reduced by the amount or percentage, if any, necessary under applicable law to relieve the Modine Released Parties of all liability to such Non-Settling Defendants or third parties on such barred claims, as set forth in Part XIV of the Settlement Agreement.  Such judgment reduction, partial or complete release, settlement credit, relief, or set-off, if any, shall be in any amount or percentage sufficient under applicable law as determined by the Court to compensate such Non-Settling Defendants or third

4

parties for the loss of any such barred claims against the Modine Released Parties.  Nothing in this Paragraph shall be construed to bar any Person who is alleged to be a joint tortfeasor, co-tortfeasor, co-conspirator, or co-obligor with any of the Modine Released Parties from instituting, commencing, prosecuting, or participating in any claim, claim-over, cross-claim, action, or proceeding, however denominated, against a Modine Released Party in any litigation in which claims against the Modine Released Party are not released or discharged pursuant to this Order.

I.      The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement.

J.      Under Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment as to all claims against Modine, and judgment of dismissal as to Modine shall be final and entered forthwith.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

5