# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENN GATES, ET AL., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ROHM AND HAAS COMPANY, ET AL., | : | NO. 06-1743 |
| | : | |
| Defendants. | : | |

## MEMORANDUM

GENE E.K. PRATTER, J.                                                                                 MARCH 23, 2011

Liaison Counsel for the Medical Monitoring Settlement Class and Defendant Modine Manufacturing Company are jointly seeking the Court's authorization for the distribution of unclaimed funds remaining in the settlement class fund to charitable organizations. Liaison Counsel and Modine identified possible charitable recipients—including the Gavers Community Cancer Foundation, Johnsburg Educational Partnership Foundation Inc., McHenry County Community Foundation, McHenry High School District 156 Foundation Inc., and Neighbors Helping Neighbors Charity, NFP—and proposed allocations for *cy pres* funds. For the reasons set forth below, the Court directs the remaining funds be distributed as *cy pres* distributions to each of those five charitable organizations enumerated above according to the allocation shares and conditions described below.

## BACKGROUND

Glenn and Donna Gates, on behalf of themselves and all others similarly situated, filed suit against Modine Manufacturing Company and other defendants pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and state law for damages allegedly resulting from contamination by

pollutants generated and released by Modine, among others. In January 2008, Plaintiffs and Modine entered into a Settlement Agreement, subject to the Court's approval, to resolve the claims Plaintiffs asserted against Modine on behalf of themselves and two proposed settlement classes, a Medical Monitoring Settlement Class and a Property Damage Settlement Class.[1]

Among other things, the Settlement Agreement established the Medical Monitoring Settlement Class fund, a $1.4 million fund for payments to Medical Monitoring Settlement Class claimants, "allowing for reimbursement of up to $1,400 for any Medical Monitoring Settlement Class member to obtain an MRI or other appropriate screening or test . . . and the expense of reading and reporting on the results . . . ." *See* Settlement Agreement (Docket No. 155-2). The Agreement required that the medical monitoring claimants avail themselves of such procedures within six months of the date the Agreement became final "or forfeit their right to participate in the medical monitoring relief." *Id.*

The Agreement also provided for the disposition of excess undistributed Medical Monitoring Settlement Class funds. Section IX(E) of the Agreement provides:

> If there are any funds remaining [after a request for disbursement for claims received 180 days after the finalization of the agreement and/or to pay for additional medical monitoring procedures], Class Counsel shall petition the Court to pay them over to a local Section 501(c)(3) charity for the benefit of the McCullom Lake Village. Any payment to a local Section 501(c)(3) charity shall be subjected to the Court's prior approval, and Modine shall be entitled to notice and

---

[1] The Medical Monitoring Settlement Class is defined to include all persons who lived for a total of one year or more (whether consecutively or not) within McCullom Lake Village during the time period from January 1, 1968 to December 31, 2002. The Property Damage Settlement Class is defined to include all persons who have held an ownership interest in real property within McCullom Lake Village at any time between April 25, 2006 (the date of the filing of the Complaint) to January 18, 2008. Excluded from both classes are individuals for whom a brain tumor was detected prior to January 18, 2008 (the date of the Settlement Agreement) and/or individuals who have already filed personal injury claims in any court of competent jurisdiction arising out of exposure to chlorinated solvents as of January 18, 2008.

> an opportunity to be heard as to the charity proposed by Plaintiffs or otherwise to be selected.

*Id.* Accordingly, possible recipients for any remaining funds must be local Section 501(c)(3) charitable organizations that benefit McCullom Lake Village. Once Modine has had notice and opportunity to be heard, the donation of any remaining funds is contingent upon the Court's approval.

After a fairness hearing, the Court approved the Settlement Agreement. *Gates v. Rohm and Haas Co.*, Civil Action No. 06-1743, 2008 WL 4078456 (E.D. Pa. Aug. 22, 2008). In its approval order, the Court retained jurisdiction over the performance of the Agreement. *Id.* at *12 ("The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement.").

## *CY PRES* DISTRIBUTION

"When an aggregate class recovery is not fully allocated to class members, the unclaimed portion may be distributed for the indirect or partial benefit of the class under *cy pres* principles." 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 10:16 (4th ed. 2002). In the class action context, courts have used *cy pres* principles to distribute remaining unclaimed settlement funds to accomplish an indirect benefit for the class. *See In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 WL 4542669 (E.D. Pa. Oct. 3, 2008) (applying the *cy pres* doctrine in distributing unclaimed settlement funds in a class action); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574 (E.D. Pa. 2005) (applying *cy pres* principles to determine the distribution of excess class settlement funds); *In re Matzo Food Prods. Litig.*, 156 F.R.D. 600, 605 (D.N.J. 1994) (discussing *cy pres* as a principle for possible distribution of

remaining funds in the context of preliminary approval).[2]  Courts generally "have approved charitable donations to organizations geared toward combating harms similar to those that the injured the class members.  Such a donation may serve the *cy pres* principle of indirectly benefitting all class members." *Linerboard*, 2008 WL 4542669, at *3 (quotations and citations omitted).

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir.1990) (citing *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir.1984)).  In applying *cy pres* principles, the court appropriately may consider: "(1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." *Schwartz*, 362 F. Supp. 2d at 576 (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002)).  Additionally, the Court recognizes that, even in the absence of any philanthropic interests previously expressed by the Class or by counsel, a "frequent use of class funds not accruing to the class members is a donation to a public or otherwise non-profit entity combating harms similar to those that injured the class members." *Jones v. Nat'l Distillers*, 56 F.Supp.2d 355, 358 (S.D.N.Y. 1999); *see also Linerboard*, 2008 WL 4542669, at *3 (recognizing the same).

---

[2] *But see In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 363 (3d Cir. 2010) (Weis, J., concurring and dissenting) (observing that final approval of a settlement agreement may not be appropriate when the agreement provides for unclaimed funds to be distributed *cy pres* to animal welfare-related organizations, because the class action was not charitable in nature, and there was "no individual whose wishes need be considered and there is no intent to benefit charitable purposes that can be attributed to the class members or the lawyers who established the fund").

**DISCUSSION**

Here, following the Court's approval of the Settlement Agreement and the subsequent distribution of settlement checks, Liaison Counsel informed the Court that $896,661.93 remains in the Medical Monitor Class fund as of July 16, 2010. Liaison Counsel recommends that $81,562.83 of that remaining amount continue to be reserved, in order to provide $396.34 for an uncashed claimant check and $81,166.49 for administrative costs associated with administration of the fund.[3] Given that Modine does not object to Liaison Counsel's recommendation and the basis for the proposal is reasonable, the Court is addressing a fund of $815,099.10, plus interest earned on the full $896,661.93 sum since July 16, 2010, as presently available for disbursement.[4]

In a July 27, 2010 letter to the Court, Liaison Counsel outlined its and Modine's proposals concerning *cy pres* distributions. In the letter, as outlined above, Liaison Counsel identified several possible recipient charities, including Gavers Community Cancer Foundation ("Gavers"), Johnsburg Educational Partnership Foundation Inc. ("JEPF"), McHenry County Community Foundation ("MCCF"), McHenry High School District 156 Foundation Inc. ("MCHS District 156 Foundation"), and Neighbors Helping Neighbors Charity, NFP ("NHN").

Gavers is a documented 501(c)(3) organization that was established in 1999 and existing in McHenry County, Illinois, in which county McCullom Lake Village is located. *See* News, *available at* http://www.gavers.org/pages/news.html; IRS Publication 78, *available at*

---

[3] These figures are based upon a July 16, 2010 letter to Liaison Counsel from the class administrators, Heffler, Radetich & Saitta LLP. They are subject to modification for the passage of time from the date of this Memorandum.

[4] If necessary, following the determination of the allocation of any remainder in the settlement fund associated with checks that are not properly or timely negotiated or funds that are not fully disbursed, the parties may make the appropriate motion for the Court's review.

http://www.irs.gov/app/pub-78/ (Cumulative List of Organizations described in Internal Revenue Code Section 170(c), listing organizations recognized as qualified charitable donees). The Gavers organization is dedicated to promoting cancer awareness and screening and was "created to conduct local fundraisers to generate funds to be distributed to other qualified 501(c)(3) organizations, with an emphasis on organizations that specialize in cancer research and treatment." Gavers Community Cancer Foundation, Illinois Charitable Organization Annual Report, Fiscal Year 2008, *available at* http://www.illinoisattorneygeneral.gov/charities/search/index.jsp. Liaison Counsel represented that Gavers is the largest non-profit cancer fighting organization in McHenry County.

JEPF is registered as a 501(c)(3) organization created to raise funds on behalf of the Johnsburg School District 12, which is adjacent to McCullom Lake Village. *See* Who We Are, *available at* http://www.jepf.org/; IRS Publication 78, *supra*. Liaison Counsel informed the Court that the Modine plant is located in this School District's boundaries. The funds JEPF raises are used to acquire new technology and software for schools within the District, and fund college scholarships for District students. "Johnsburg Educational Partnership Foundation's Support of Local Schools Through Creative and Fun Events," posted on February 1, 2011, *available at* http://www.johnsburg12.org/posts/2011/02/10/johnsburg-educational-partnership-foundations-support-of-local-schools-through-crea.

MCHS District 156 Foundation was created in 1993 and provides, through fundraising activities, financial support to the McHenry High School District 156, which is located south of the Modine plant and serves students who reside in McCullom Lake Village. The MCHS District 156 Foundation is registered as a 501(c)(3) organization, and provides funds for student

6

college scholarships and school educational resources. *See* History of the Foundation, available at http://sites.google.com/site/mchsfoundation/history-of-the-foundation; IRS Publication 78, *supra*.

MCCF is a 501(c)(3) organization that was established in 2001 and is located in McHenry County, Illinois. *See* About Us, *available at* http://www.mccfdn.org/about__county_ community_foundation.cfm; IRS Publication 78, *supra*. MCCF was "established to accept donor-directed funds and unrestricted endowments to grant seed or expansion money for unmet social, cultural, educational, and char[it]able needs throughout McHenry County[.] [W]hile providing philanthropic-minded citizens and nonprofit agencies with a central, local administrated foundation, the Foundation also seeks to be a community partner, and at times leader, in addressing local needs." McHenry County Community Foundation, Illinois Charitable Organization Annual Report, Fiscal Year 2009, *available at* http://www.illinoisattorneygeneral.gov/charities/search/index.jsp.

NHN is a recently-created volunteer organization, which Liaison Counsel explains has an application pending for 501(c)(3) status. It was created in the spirit of assisting McCullom Lake in-need neighbors with basic yard work, home repairs, and applications for housing grants. *See* Joseph Bustos, "*It's the Right Thing To Do": Volunteers Help Residents with Yard Work, Home Repairs*, *Northwest Herald*, Mar. 4, 2010, at 3C. There is no information available to the Court as to whether or when NHN will achieve the 501(c)(3) designation.

In the July 27, 2010 letter, Liaison Counsel indicated that Modine recommended that Gavers receive forty percent (40%) of the remainder funds, and that sixty percent (60%) be divided equally between JEPF and MCHS District 156 Foundation. Liaison Counsel also

7

provided a recommendation for disbursement of the funds, proposing that forty percent (40%) of the funds be directed to Gavers, forty percent (40%) to NHN, and twenty percent (20%) to MCHS District 156 Foundation.

In addition to considering the parties' counsel's recommendations, at a conference with the parties' counsel on September 8, 2010, the Court discussed the application of *cy pres* principles, as well as the proposed organizations and allocation of funds. The Court further considered a September 13, 2010 letter and materials provided by Liaison Counsel following the conference concerning NHN's status.

Based upon all of these considerations, the Court concludes that the following *cy pres* distributions of the funds available for disbursement are appropriate, subject to certain conditions more fully described below:

| | |
|---|---|
| Gavers Community Cancer Foundation: | 50% |
| Johnsburg Education Partnership Foundation Inc.: | 10% |
| McHenry County Community Foundation: | 20% |
| McHenry High School District 156 Foundation Inc.: | 10% |
| Neighbors Helping Neighbors Charity, NFP: | 10% |

The Court finds a fifty percent (50%) *cy pres* distribution to Gavers appropriate, because not only do the parties agree that a substantial portion of the remaining funds should be distributed to Gavers, but also this organization is located in McHenry County, where McCullom Village is located, and is dedicated to combating cancer, which is akin to the health risks and harm at issue in this class action, and dedicates funds to cancer screening, which bears a clear relationship to the purpose of the Medical Monitoring Settlement Class fund. For these same reasons, in the event that certain other recipient organizations cannot meet the conditions that the

Court establishes for a *cy pres* distribution to those organizations, any allocation designated to such organization(s) shall be directed to Gavers instead.

The Court determines that the *cy pres* distributions to MCCF, JEPF, MCHS District 156 Foundation, and NHN are appropriate, recognizing that such distributions indirectly benefit the class members, because they are made to organizations that serve McCullom Village, McHenry County, and school districts for, or adjacent to, McCullom Village. Furthermore, the Settlement Agreement only provided general guidelines for the disposition of the unclaimed funds, and within the Agreement's provisions there is no obvious limiting requirement for the excess funds to benefit only class members, particularly given that the funds were provided first to give class members the particular benefit of medical monitoring. Under similar circumstances, courts have recognized the propriety of distributing unclaimed funds for broader public interest, charitable, and educational purposes. *See Jones*, 56 F. Supp. 2d at 359 ("[W]hile use of funds for purposes closely related to their origin is still the best cy pres application, the doctrine of cy pres and courts' broad equitable powers now permit use of funds for other public interest purposes by educational, charitable, and other public service organizations." (citing *Superior Beverage Co. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 478-79 (N.D. Ill.1993) (collecting cases)); *Newberg*, *supra* § 10.24 ("In cases where the parties have not agreed as part of a settlement for the disposition of such unclaimed balance, the court . . . may order the residual monies to be distributed to a use completely unrelated to the injured class members, such as to an educational institution, to a recognized charity or public service organization . . . ."). The organizations proposed here promote public interest, charitable, and educational purposes consistent with the general focus of this settlement.

Although JEPF, MCHS District 156 Foundation, and NHN appear to be deserving recipients of *cy pres* funds, the Court nonetheless deems it appropriate to condition their *cy pres* distributions. First, the Court was able to confirm through available public records that Gavers and MCCF are presently registered with the Illinois Attorney General as charitable organizations and file Charitable Organization Annual Reports so as to be eligible under applicable state law to receive any unclaimed settlement funds as a donation. *See* 760 Ill. Comp. Stat. 55/1 et seq. (Charitable Trust Act); 225 Ill. Comp. Stat. 460/1 et seq. (Solicitation for Charity Act). The Court, however, was unable to confirm such information for JEPF, MCHS District 156 Foundation, and NHN. Second, because NHN has only applied for 501(c)(3) status, it does not presently constitute a 501(c)(3) organization pursuant to the Settlement Agreement. Based on these considerations, JEPF, MCHS District 156 Foundation, and NHN may only receive the proposed *cy pres* distributions to the extent those organizations, by December 31, 2011, provide Liaison Counsel and Modine with the appropriate documentation to establish that the organization is registered with the Illinois Attorney General and is in compliance with state law requirements, and, specific to NHN only, that the Internal Revenue Service recognizes NHN as a 501(c)(3) organization. If JEPF, MCHS District 156 Foundation, or NHN are not able to meet these conditions, the organization's respective allocation shall be, as previously discussed, distributed to Gavers.

**CONCLUSION**

For the foregoing reasons, the Court concludes that, subject to the allocations and conditions provided in this opinion, *cy pres* distributions of $815,099.10, plus any interest earned the full $896,661.93 fund since July 16, 2010, remaining in the Medical Monitoring Settlement

Class fund are to be distributed to Gavers Community Cancer Foundation, Johnsburg Educational Partnership Foundation Inc., McHenry County Community Foundation, McHenry High School District 156 Foundation Inc., and Neighbors Helping Neighbors Charity, NFP.  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge